**Harlan Carbaugh and Warren Barklow, Plaintiffs-Appellees, v. George Peat, Defendant-Appellant.**

**Gen. No. 11,723.**

Second District, First Division.

March 19, 1963.

Eaton and Leemon, of Mount Carroll, for appellant.

Knight, Ingrassia & Roszkowski, of Rockford (Stanley J. Roszkowski, of counsel), for appellees.

DOVE, J.

Based upon a complaint charging defendant with malicious prosecution, each plaintiff, in the Circuit Court of Carroll County recovered a judgment against

the defendant for $1750. This judgment was entered upon a verdict of a jury. The trial court, overruled defendant's post-trial motion and this appeal follows.

The complaint filed June 20, 1961, consisted of two counts. In the first count Harlan Carbaugh alleged that he had always been a good and honest citizen, had always behaved himself and had never been guilty or suspected of any crime and on and prior to March 31, 1961 was not guilty of the crime of malicious mischief. This count further alleged that prior to March 31, 1961, the plaintiff was a duly elected alderman of Lanark, Illinois and was a candidate for re-election at the election to be held on April 18, 1961; that defendant was Mayor of Lanark, and a candidate for re-election; that plaintiff is sole owner of, and had for several years conducted a farm implement business in Lanark, all of which was well known to defendant.

This count further alleged that defendant maliciously and without probable cause and intending to injure plaintiff signed a complaint charging plaintiff with the crime of malicious mischief and caused the plaintiff to be arrested by the Sheriff and that a trial was had on April 3, 1961 which resulted in the acquittal of this plaintiff.

The second count was on behalf of plaintiff, Barklow and was substantially the same as count one, except it was alleged that this plaintiff was on March 31, 1961, and for several years prior to that date, the owner of an electrical contracting business. Attached to the complaint were copies of the criminal complaints, verified by defendant. One of the complaints charged, that plaintiff, Carbaugh on March 28, 1961, "wrongfully, unlawfully, wilfully and maliciously injured one single door combination safe being then and there the personal property of the City of Lanark, a municipal corporation of the State of Illinois," contrary to the provisions of Section 425 of the

Criminal Code of this State. The other criminal complaint was identical except it made the same charge against plaintiff, Barklow.

The answer of defendant admitted that plaintiffs were aldermen of the City of Lanark and that defendant was Mayor of that City and had been for many years and was a candidate for re-election. The other allegations of the complaint were denied. By his affirmative defense defendant averred that at the time of the issuance of the complaint and warrant referred to in the complaint, defendant was acting in his official capacity as Mayor, and acting for and on behalf of the City of Lanark; that he was operating in conjunction with the City Clerk and signed the complaint under the advice of the Sheriff and State's Attorney of Carroll County and that the complaint and warrant were prepared by the State's Attorney after defendant had sought and obtained legal advice from the State's Attorney.

Counsel for appellant states that there is no question with reference to the pleadings, admission or rejection of evidence, conduct of counsel, or instructions, presented by this appeal; that it is appellant's contention that the evidence found in the record does not sustain the verdict; that the conduct of appellant in consulting with Robert L. Morris, City Attorney and Wm. B. Petty, State's Attorney, exempts defendant from liability in this case and that the evidence with reference to damages is wholly insufficient to sustain the judgment.

The record discloses that on March 21, 1961, defendant was the Mayor of Lanark and had been a member of the City Council, either as Mayor or an Alderman, for seventeen years prior to that date. He was a candidate to succeed himself as Mayor in the election to be held on April 18, 1961. Harlan Carbaugh one of the plaintiffs, was at that time one of the six Aldermen of the City, Carbaugh was also a candidate for Mayor.

41

Plaintiff, Warren Barklow, was also an Alderman and he and Carbaugh were political opponents of the Mayor. The three parties to this litigation were all engaged in private business in Lanark and had been associated in city business and city affairs for many years. As abstracted Mr. Peat testified: "I have known Mr. Carbaugh all his life. He has lived in the community and been in business all during this time and so have I. To my knowledge, he has never been arrested for any crime. I did not personally contact Mr. Carbaugh or Mr. Barklow with reference to why they removed the safe because neither one of them was giving me any cooperation on the City Council. I did not consult with them. Mr. Carbaugh and Mr. Barklow and I have been at odds for a number of years. Mr. Carbaugh was trying to take over the duties of Mayor and Mr. Barklow was trying to take over the police department. Mr. Carbaugh was a good Alderman in handling city business."

The safe referred to by Mr. Peat in his testimony, the record discloses, was an iron one purchased by the City in 1934. It had been moved to the back portion of the City Hall and had not been used for any purpose since 1935. The City was considering making an opening from the rear portion of the City Hall into a garage. In order to do this the safe had to be moved or disposed of. On March 21, 1961, at a regular meeting of the council, at which the Mayor and all six Aldermen attended, a motion was made and carried authorizing the Building and Grounds Committee of the Council to have this door constructed and the junk in the rear of the City Hall removed.

The members of the City Council at this time were, Perry Baxter, Darius Krell, Ralph Glenn, Keith Rogers, Harlan Carbaugh, Warren Barklow and the defendant, Mayor George Peat. Mr. Baxter testified that he was Chairman of the Public Grounds Committee; that on March 27, 1961 "We met and discussed cleaning

42

out the back part of the City Hall and installing a garage door which was to face east in the back of the building and was to be about 14 feet by 10 feet. All the Aldermen were present at this meeting. In the southeast part of this building there was some junk, along with the safe, which would obstruct the door opening, and we had authority to clean up that part of the building, and the junk was subsequently removed and the garage door has been constructed. I know that Carbaugh had authority to move the safe. We gave Mr. Carbaugh the authority to remove the safe; that is, the Building and Grounds Committee, and all six aldermen were present when he was given this authority. The safe was about 3 feet wide, 4 feet high and 2½ feet deep. It was on rollers and capable of being moved. The safe had on it 1849, and was over 100 years old and hadn't been used by the City."

Darius Krell testified that he was a member of the Public Grounds Committee and that at the meeting on March 27, 1961, all the Aldermen were present but the Mayor and City Clerk were not there. Mr. Krell further testified that the back room of the City Hall was used mostly for storage; that there was a safe there "in the place where a door was to be cut." He further testified that Mr. Carbaugh was given authority by the Public Grounds Committee to remove the junk from that area. "We decided," continued this witness, "to junk the old safe. It was about 3 feet high, 30 inches wide and 3 feet square. The safe was not being used by the City Council as we had a safe in the council room, which was built in the wall."

Ralph Glenn testified that he attended this meeting on March 27, 1961 and saw the safe in the garage area of the building and that there was other junk there. "We all agreed," testified Alderman Glenn, "that the area should be cleaned up and that the safe should be junked. We all agreed to junk the safe but nobody was specified to junk it. The safe was junk."

43

Keith Rogers was Chief of Police of Lanark and also an alderman. He was called as a witness by defendant and testified that he was a member of the Public Grounds Committee and attended the meeting on March 27, 1961; that the matter of removing the safe was discussed but how it was to be opened was not considered. He further testified that nobody was given authority to remove the safe from the City Hall. On cross-examination this witness testified: "I suggested that the safe be moved because it was of no use. I felt the safe should be removed but not junked. The safe was in average condition and could be used. The safe was never opened that I know of and I did not know of any one who could open it."

The plaintiffs testified that at this meeting on March 27, 1961 the members of the Building and Grounds Committee decided to junk the safe and authorized Mr. Carbaugh to remove it. Four days later, on the morning of March 31st, Leslie Fulrath, Superintendent of Streets and Chief of Police of Lanark, was at the City Hall and with Earl Nailer, City Clerk, was engaged in cleaning the rear of the City Hall where the proposed door was to be installed. Mr. Fulrath testified that the safe was in the southeast corner of the Hall; "that a lot of things were stored there, some old paint and broken chairs were back there. We were supposed to clean those out. Keith Rogers, Mr. Carbaugh and Mr. Barklow came in and Mr. Barklow got a screw driver and was going to take the back off of the safe." Barklow was unsuccessful and shortly thereafter all the parties left the City Hall.

Between 1:30 and 2:00 o'clock in the afternoon of the same day Mr. Barklow returned to the City Hall with a tractor belonging to Mr. Carbaugh, and with the aid of Allan Brandt, a City Policeman, the safe was removed to Mr. Carbaugh's farm implement and machinery shop where it was opened and the contents, which consisted of receipts and worthless papers

44

were examined. These were removed from the safe and subsequently returned to the City Hall. The safe was placed on a scrap pile at the rear of Mr. Carbaugh's shop.

Upon learning what had transpired, defendant, accompanied by the City Clerk, went to the office of the City Attorney, Robert Morris, at Lanark. The defendant testified that the City Attorney advised him to consult the State's Attorney; that he then went to Mount Carroll and talked to the Sheriff who also advised him to talk to the State's Attorney; that he then contacted the State's Attorney and told him that the safe had been taken from the City Hall to Carbaugh's and that Carbaugh had stated that the safe had been junked. The defendant testified that then the State's Attorney drafted the complaints which defendant signed.

William B. Petty was called as a witness by the plaintiffs and testified that he was the State's Attorney of Carroll County at the time of this occurrence and as abstracted by counsel for appellant, this witness continued: "The defendant and the City Clerk came to see me at my home in Mount Carroll. The defendant told me that he had a complaint to file and wanted to talk to me about it. I said I would meet him at the Sheriff's Office. At the Sheriff's office, the defendant told me he wanted to sign a complaint against plaintiffs for taking a safe from city property. I prepared the complaint myself and instructed that it be signed before a Justice of the Peace. I did not advise the defendant to sign the complaint. I merely told him that he did not have a larceny charge." Mr. Petty further testified that defendant did not say to him that he wanted the State's Attorney to make any investigation and never said in his presence that he, the defendant, wanted the Sheriff to make any investigation. He further testified that he asked the defendant what the plain-

45

tiffs wanted with the safe and defendant said that he felt that they were trying to find something to use against him in the campaign.

Harry Miller testified that he was Sheriff of Carroll County at this time; that defendant asked him to swear out a complaint against plaintiffs but he, the sheriff, refused and sent him to the State's Attorney. The Sheriff further testified that the defendant never asked him to make any investigation but told him that he wanted to file a complaint against the plaintiffs for larceny and it was then that he told him to see the State's Attorney.

The defendant testified that the State's Attorney wanted to file the charges against the plaintiffs and denied that he told either the Sheriff or State's Attorney that he wanted to swear out a complaint against the plaintiffs for larceny. He further testified that the State's Attorney never asked him why the plaintiffs wanted the safe, and denied that he said that the reason the plaintiffs wanted the safe was so they could get something to use against him in the election. "I merely came down to ask the Sheriff and State's Attorney to make an investigation," continued this witness, "as to who took the safe. I signed the complaint the very same time I came over to ask them to make the investigation. They didn't make any investigation at all. Without knowing who was guilty of taking the safe I signed the complaint against Mr. Carbaugh and Mr. Barklow. The State's Attorney wanted me to, I signed the complaint the very same day. I asked the State's Attorney to make the investigation."

At the meeting with the Sheriff and State's Attorney the State's Attorney prepared the complaints and defendant proceeded to the office of Lee R. Gifford, a justice of the peace, where the complaints were signed and sworn to and warrants issued for the defendants who were arrested. At a hearing had before

said justice on April 3, 1961, the defendants were found not guilty and this action followed.

 The essential elements of a cause of action for malicious prosecution are the original institution of judicial proceedings, either civil or criminal, by, or at the instance of, the defendant, the termination of such proceedings in plaintiff's favor, malice in instituting the proceedings, want of probable cause for the proceedings, and the suffering of injury or damage as the result of the prosecution. (25 ILP Malicious Prosecution, § 11.) Probable cause, which will justify the institution of a criminal prosecution and prevent liability for the institution thereof on the ground of malicious prosecution, is such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe or entertain an honest and sound suspicion that the person accused is guilty of the offense charged. (25 ILP Malicious Prosecution, § 15.) The question of probable cause or the absence thereof is in no sense dependent on the guilt or innocence of accused but depends on the prosecutor's honest belief in such guilt based on reasonable grounds. When such belief is shown probable cause is sufficiently established even though accused was in fact innocent. (25 ILP Malicious Prosecution, § 15, p 577.)

 Malice is an essential element of malicious prosecution. The prosecution of a person with any motive other than that of bringing a guilty party to justice is a malicious prosecution in law. It is not established merely by the fact that plaintiff was acquitted of the criminal charge. It may be inferred from want of probable cause but will not be inferred where probable cause exists and will not be presumed if all the evidence shows there was no malice. (25 ILP Malicious Prosecution, §§ 19, 20.) Where a person, in good faith, submits the facts fairly to the prosecuting attorney and obtains his advice with re-

47

spect to a person who is supposed to have committed some offense, and the person acts on the advice given by the prosecuting attorney and institutes proceedings of a criminal nature against the other person, and he is arrested and prosecuted, such facts will constitute a complete defense to an action for malicious prosecution, altho the person charged is not, in fact, guilty. (25 ILP Malicious Prosecution, § 16.)

 Whether the circumstances proved to show probable cause are true is a question of fact. Malice, as an element of the cause of action for malicious prosecution is also, ordinarily, a question of fact for the jury as is also the question whether defendant communicated to the State's Attorney all the facts of which he had knowledge, and in good faith acted on his advice in instituting the criminal proceeding. Where the evidence, upon these questions, is conflicting, the issues must be submitted to a jury. (25 ILP Malicious Prosecution, § 42.)

 Counsel for appellant state that the only disputed question of fact in this case is whether the defendant acted in good faith and made a full disclosure of the information he possessed at the time he consulted with Robert L. Morris, City Attorney of Lanark and William B. Petty, State's Attorney of Carroll County, or whether his actions were motivated by malice against the plaintiffs. These are questions of fact to be determined by the jury. The City Attorney, Robert L. Morris did not testify. He was not called as a witness. Counsel suggests in his argument "that no public official who once seeks the advice of a prosecuting attorney before the issuance of a criminal complaint and warrant, and who signs it under the direction of the prosecuting attorney, should be legally held responsible for money damages, as a result of either the incompetence or indifference of the prosecutor." In support of this argument counsel cite

48

Butler v. Lewis, 318 Ill App 225, 47 NE2d 512, and "respectfully suggests that this court should be guided by that precedent in arriving at its opinion in this appeal."

In the Butler case the plaintiffs who were brothers brought an action charging that defendant instituted criminal charges against them with the malicious intent to injure the plaintiffs. It appeared that defendant was the owner of a farm and that one of the plaintiffs moved on that farm and had complete charge of the livestock and grain on that farm. Thereafter upon a visit to the farm defendant missed some cattle, hogs and grain, investigated the loss of this property and found that some of the hogs had been traded to a Mr. Macklin of DuQuoin and upon being identified as the hogs of defendant they were delivered by Mr. Macklin to defendant. Thereafter defendant consulted with the Sheriff of Jackson County and the State's Attorney of Saline County and a complaint was filed, a hearing had and the defendants in the criminal proceeding were bound over to await the action of the grand jury of Saline County. The defendant appeared before the grand jury of that county and an indictment charging the defendants with larceny was returned by the grand jury. Subsequently a trial was had and defendants were acquitted.

In reversing judgments of $1250 for each defendant the Appellate Court reviewed the evidence of the several witnesses including the testimony of the State's Attorney and Assistant State's Attorney of Saline County. The State's Attorney testified that he talked to defendant about the charge and made an investigation thereof and that from his investigation he was of the opinion that there were reasonable grounds to believe defendants guilty of the charge and a reasonable probability to believe that the defendants were guilty of larceny and he so advised the defendant in the

49

malicious prosecution suit. The State's Attorney further testified that he made an independent investigation and from the facts he learned, after talking with one of the defendants in the criminal action and with other witnesses, he discovered no misrepresentation of any kind that the defendant, in the malicious prosecution case had made.

In the Appellate Court, it was said: "It is the well established law in this State that when the prosecuting witness fully and fairly states all the facts relative to a proposed prosecution to reputable counsel and receives advice from such counsel that there is probable cause for a criminal prosecution, that it is a complete legal defense when he acts on this advice." The court then concluded: "We believe the record in this case discloses a complete absence of anything malicious on the part of the defendant herein in instituting proceedings against, the plaintiffs herein, and we are further persuaded from the evidence that he acted not without probable cause in instituting said proceedings, and those facts, coupled with his conduct in receiving advice from counsel in the matter, we believe constitutes a complete legal defense in this case, and under the showing made, we believe the court should have directed a verdict in favor of the defendant in this case."

The factual situation in the instant case is not analogous to that in the Butler case. Whether appellant fairly submitted, to the State's Attorney of Carroll County all the facts of which he had knowledge and in good faith acted on his advice, were questions of fact which the jury were required to pass upon. The evidence of appellant conflicted with that of the Sheriff and State's Attorney. The jury's finding that appellant did not fully and fairly state all the facts relative to the proposed prosecution to the State's Attorney, and its finding of the existence of malice and

the want of probable cause are supported by the evidence found in this record and we should not disregard those findings.

What this record discloses is that a political campaign was in progress and the parties to this record were in opposing camps. The parties had been chosen by their fellow citizens to administer the affairs of their city. They were business men of mature years and well acquainted with each other. They all knew the location of this safe and the condition of that portion of the City Hall where it was and knew that a sizeable opening was to be made in the wall against which this safe stood; they knew the safe was old, had been of no use to the City for years and that it should be dispensed with and that the council had instructed the Building and Grounds Committee of the council to clean up the portion of the City Hall where the safe stood. Appellant knew that the safe had been removed by one of appellees with the equipment of the other, from the City Hall shortly after the noon hour and conveyed through the streets of the city, assisted by a police officer of the city. Appellant knew the reputation and standing in the community of appellees and had he contacted any member of the Building and Grounds Committee he would have been advised of its action.

 From these and other facts and circumstances in evidence, the jury, under instructions of the court, of which no complaint is made, found that appellant did not, in good faith, submit the facts fairly to the prosecuting attorney. From a consideration of the entire record we would not be justified in interfering with the conclusion arrived at by the jury, and in our opinion there is sufficient basis in the evidence which justified the jury in awarding exemplary damages in addition to the compensatory damages as disclosed by the record.

51

There is no reversible error in this record and the judgment of the Circuit Court of Carroll County is affirmed.

Judgment affirmed.

McNEAL, P. J. and SMITH, J., concur.