(No. 39136.—

SIMON FREIDES, Appellant, vs. SANI-MODE MANUFACTURING Co. et al., Appellees.

Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.

ERRETT O. GRAHAM, of Chicago, (SIDNEY Z. KARASIK, of counsel,) for the appellant.

SHERWIN & SHERWIN, of Chicago, (JULIUS L. SHERWIN and THEODORE R. SHERWIN, of counsel,) for the appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This case is before us on petition for leave to appeal granted from the reversal by the appellate court of the judgment of the circuit court of Cook County (then the superior court) of $25,000 damages entered on jury verdict in a case for malicious prosecution against individual defendant, Manny Stern, and corporate defendant, Sani-Mode Manufacturing Co. Stern was president and principal stockholder of Sani-Mode.

Freides filed this complaint for malicious prosecution, charging that Stern and the corporate defendant (through Stern) contrived and maliciously intended to injure the good name and credit of Freides, to bring him into public scandal, infamy and disgrace, to cause him to be imprisoned, and to impoverish, oppress and ruin him by appearing before the grand jury and testifying falsely, maliciously, and without probable cause so as to charge him with feloniously and fraudulently stealing, taking and converting to his own use plastic film of the value of $5,000.

Plaintiff charged defendants falsely and maliciously procured two indictments and arrest of plaintiff. The first indictment returned by the grand jury on July 28, 1948, was nolle prossed because it was defective in stating that the property involved was owned by Stern instead of Sani-Mode. The second indictment was returned in November of 1948, stating the same offense, but charging that the property converted was owned by Sani-Mode and was of the value of $4500.

Plaintiff was tried by a jury on the second indictment and found not guilty February 25, 1949. Plaintiff then brought this suit, which was twice dismissed for want of prosecution. Verdict was rendered and judgment for plaintiff for $25,000 was entered in 1962 (some fourteen years after the acts charged).

The appellate court reversed the judgment for plaintiff and entered judgment for defendants. It held that as a matter of law the defendants acted with probable cause in assisting in the indicting of plaintiff. Its opinion further held that a *prima facie* case of probable cause is established by a grand jury's return of an indictment and that such *prima facie* case can be overcome only by proof of false or incomplete testimony before the grand jury. Reviewing and weighing the evidence, the appellate court held that plaintiff's evidence failed to show lack of probable cause and malice on the part of the defendants.

The evidence at this trial showed that the defendant Sani-Mode processed and sold plastic products, primarily tablecloths and curtains. Plaintiff, as a subcontractor of Sani-Mode, was sent rolls of material from it. Plaintiff cut and sewed this material to specifications furnished by the corporate defendant at an agreed price per dozen items and using said defendant's patterns. The material remained in plaintiff's possession. From time to time, Sani-Mode sent plaintiff additional orders to be filled from the excess yardage which was in plaintiff's possession. Plaintiff's office manager testified she made no record of the material left at the completion of a particular order but kept on cutting until the rolls were used. Plaintiff sometimes used the same kind of material which he bought from another source.

On June 15, 1948, plaintiff subcontracted some work to another and sent four rolls of plain material to American Cutting and Binding Company in old cartons bearing labels of Sani-Mode. A question arose as to the order, whereby American called Sani-Mode. In response, an employee of Stern and later Stern and his attorney went to plaintiff's factory where Stern said he recognized many rolls of his material.

At plaintiff's factory, Stern claimed he identified material patterns of his stock which for some time had been discontinued. He testified he confronted plaintiff with these facts and plaintiff first said he bought them of another, but couldn't produce bills to show where he bought them. Stern testified plaintiff said "I am doing you wrong.—I am willing to make good, let's see how much goods belong to you, and we will pull it out and I will agree to let you have it." Stern further claimed he saw 70 rolls of his material in plaintiff's store. Plaintiff denied that he made the statement attributed to him. According to plaintiff, only 20 rolls of Sani-Mode material were on hand but there were many rolls of other material he had purchased elsewhere. Plaintiff con-

tended there was shrinkage, damaged goods and other wastage of defendant's material.

Plaintiff called his lawyer and thereafter ordered Stern off the premises. Defendants started a replevin suit. Several years later on trial of the replevin suit, it was determined that the property seized belonged to Sani-Mode. Upon stipulation, the suit for the rest of the items was dismissed and Sani-Mode paid Freides $1500. After the original seizure by the bailiff of the goods involved in the replevin suit, Stern conferred with an assistant State's Attorney and the complaints were prepared by that office for presentation to the grand jury. This was the basis of the indictments.

Malicious prosecution is an action *ex delicto* for recovery of damages which have proximately resulted to person, property or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and with malice. Although an action of this type is usually based on an arrest in criminal proceedings, it may be founded on civil action when commenced simply to harass and oppress defendant.

Essential elements of the action for malicious prosecution are (1) the commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding, (3) its *bona fide* termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice, and (6) damages resulting to plaintiff. Each of these elements must be present.

Want of probable cause for instituting the original proceedings is an indispensable element of an action for malicious prosecution. "Probable cause" has been defined in this usage as "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong sus-

picion that the person arrested is guilty." *Harpham* v. *Whitney*, 77 Ill. 32.

"Prima facie probable cause" is established by the return of the indictment by the grand jury but it is not conclusive evidence of probable cause. It may be rebutted by other evidence such as proof that the indictment was obtained by false or fraudulent testimony before the grand jury, or by failing to make a full or complete statement of facts, or by other improper or fraudulent means. (54 C.J.S. Malicious Prosecution, sec. 35, p. 996.) No decision of the court ever has restricted the rebutting evidence solely to proof of false or incomplete testimony, as the appellate court held to be the rule. Such type of proof would require an impossible burden, as the record of the testimony before the grand jury often is nonexistent and unavailable.

An indictment is but a formal accusation of a crime. Even were we to hold that the return of the indictment raised a *prima facie* case of probable cause, no insuperable burden of proof to overcome such probable cause, such as was declared by the appellate court, would serve the ends of justice. Nothing persuades us to follow a rule which would require proof of false testimony or incomplete testimony to be the sole basis of removal of such a *prima facie* case. Such an impossible burden of proof would quickly frustrate the rights of an injured person who would dare resist extortion at the hands of malicious persons.

Defendants' defense of reliance on the advice of counsel is not supported by the evidence. While advice of counsel is a defense to a suit for malicious prosecution, its validity depends upon the facts and circumstances communicated by the defendant to his attorney, whose advice must be sought, given and acted upon in good faith. Whether these elements are present is a jury question. (*Anderson* v. *Friend*, 71 Ill. 475; *Morrow* v. *Carnes*, 108 Ill. App. 621; *Luthmers* v. *Hazel*, 212 Ill. App. 199; *Cripe* v. *Pevely Dairy Co.* 275 Ill. App. 231; *Carbaugh* v. *Peat*, 40 Ill. App. 2d

37.) At no time during the trial did defendants directly raise this defense. The testimony of defendant's attorney, Savin, was that he did not accompany Stern to the State's Attorney's office, recommend the criminal prosecution of plaintiff, or was even certain that the property was wrongfully taken. The record fails to show that Stern acted on advice of his attorney but on the contrary shows he acted on his own suspicion. The jury properly could have found that defendants did not prove this defense.

The appellate court incorrectly weighed the evidence presented and overturned the verdict of the jury. The issues of "probable cause" and malice were for the jury. There was ample evidence before them to decide these issues. The judgment of the appellate court was erroneous and incorrect and should be reversed and the judgment of the trial court affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*