Howard De Correvant, Plaintiff-Appellant, v. Joseph D. Lohman, Sheriff of Cook County, Illinois, et al., Defendants-Appellees.

Gen. No. 50,856.

First District, Third Division.

June 1, 1967.

Vogel & Vogel, of Chicago (Richard A. Walkovets, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, Vincent E. Bentivenga, Jr., and Ronald Butler, Assistant State's Attorneys, of counsel), and Dent, Hampton & Doten, of Chicago, for appellees, Norman Hawthorne, Jacob P. Bergbreiter and Peter P. Gutilla.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Howard De Correvant brought an action for malicious prosecution against Joseph Lohman, then Sheriff of Cook County, and Norman Hawthorne, Jacob Bergbreiter and Peter Gutilla, then deputy sheriffs. At the close of the plaintiff's evidence the defendants moved for directed verdicts, and the motions of Lohman, Bergbreiter and Gutilla were granted. Hawthorne renewed his motion at the close of the trial and it was granted. The plaintiff appeals from the judgments entered on the verdicts.

The action arose out of De Correvant's arrest and the criminal proceeding against him initiated upon Hawthorne's signed complaint. The proceeding was before a police magistrate, and De Correvant was found guilty. He appealed to the Criminal Court of Cook County. In a trial de novo before a jury he was acquitted, and shortly afterward commenced this suit.

Defendant Lohman contends that he is not civilly liable for the acts of his deputies when their acts consisted of an allegedly unlawful arrest and malicious prosecution. Defendants Gutilla and Bergbreiter contend that there is no evidence of affirmative action on their part in the arrest and prosecution and that their acquiescence in Hawthorne's acts is insufficient to impose liability on them. Defendant Hawthorne contends that De Correvant's conviction before the magistrate created

224

a presumption of probable cause for his prosecution and that he introduced no evidence in the trial of the present case to overcome the presumption. The plaintiff responds that: (1) a statute, Ill Rev Stats, c 125, § 12 (1955), imposes liability on the sheriff for all the acts of his deputies; (2) Gutilla and Bergbreiter testified falsely before the magistrate and their conduct, which contributed to his conviction, subjects them to liability for malicious prosecution; and (3) the presumption of probable cause was rebutted by evidence that the conviction was the result of false testimony.

Late on the evening of May 7, 1955, Hawthorne and Bergbreiter, acting in their official capacities though wearing civilian clothes, entered a tavern in Niles to determine if the premises were being used for gambling. The deputies, having found no evidence of gambling, were about to leave when they overheard the bartender making some uncomplimentary statements about them. Hawthorne went to the bar, answered the bartender and asked to see his liquor license. The deputies accompanied him to a back room where he showed them the license. Here some heated words were exchanged, the men began to scuffle and the bartender was arrested. As the deputies escorted the bartender toward the exit they were met by De Correvant. He told Hawthorne, who was a stranger to him, that he "shouldn't push people around that way." An affray of shoving and grabbing broke out between De Correvant and the deputies. Ten minutes later the Niles police arrived and separated the struggling men. The identity of Hawthorne was made known and, pursuant to his statement that he "wanted that man," De Correvant was taken to the sheriff's police station and placed in a cell. Deputy Gutilla was on duty in the station and later that evening went to De Correvant's cell to have his fingerprints recorded and identified. While he was being removed from his cell a fistfight broke out. Hawthorne signed a complaint charging

225

De Correvant with having committed assault and battery at the tavern.

The first issue is the liability of Lohman. The plaintiff's complaint charged that the deputy sheriffs acted under the supervision and pursuant to the direction of Lohman as sheriff of Cook County and that the defendants and each of them caused a criminal complaint to be executed, caused the plaintiff to be brought before the magistrate and testified against him. However, the plaintiff's evidence failed to support these allegations: there was no evidence that Lohman ordered his deputies to arrest and prosecute the plaintiff, none that Lohman personally caused the complaint to issue and none that he testified against the plaintiff. Consequently, the liability of Lohman, if any, must be predicated on the fact that he was a superior official charged with the direction of his deputies and responsible for their actions— for the only connection between him and the other defendants which the evidence revealed was that he was the sheriff and they were deputy sheriffs. The plaintiff finds support for this theory of liability in Ill Rev Stats, c 125, § 12 (1955), which provides:

"§ 12. Powers of deputies.

"Deputy sheriffs, duly appointed and qualified, may perform any and all the duties of the sheriff, in the name of the sheriff, and the acts of such deputies shall be held to be acts of the sheriff."

 Illinois courts have held that a public official is exempt from liability for the unlawful acts of his subordinates unless a statute creates liability. Reiter v. Illinois Nat. Cas. Co., 397 Ill 141, 73 NE2d 412 (1947) ; People v. Gill, 30 Ill App2d 32, 173 NE2d 568 (1961). This court in Kelly v. Ogilvie, 64 Ill App2d 144, 212 NE2d 279 (1965), considered the applicability of this rule to the sheriff. Kelly was an inmate of the county jail who

was assaulted by a fellow inmate whom a third inmate, a trusty, had allowed to enter Kelly's cell. Recovery was sought against the sheriff, who was charged by law with the administration of the jail, and against the warden and a jail officer appointed by him. In our opinion we stated that the sheriff and warden,

> ". . . are not accountable for . . . [the jail officer's or the trusty's] alleged wrongdoing upon any rule of agency or respondeat superior. According to longstanding rules, a public official having the direction of a subordinate public employee is not thereby responsible for the latter's conduct. It is the underlying public body which is the principal or master."

The statutory provision on which the plaintiff relies is not a legislative exception creative of respondeat superior liability. Section 12 is titled "Powers of deputies" and its purpose is to validate the actions of deputy sheriffs, not to sanction respondeat superior liability. No case has been cited to us, and our research has found none, wherein the sheriff was held liable for the acts of his deputies by reason of this section.

■ ■ The statutory liability of the sheriff is set forth in sections 13 and 16 of chapter 125. Section 13, dealing specifically with the sheriff's vicarious liability, provides:

> "§ 13. Sheriff liable for deputy.
>
> "The sheriff shall be liable for any neglect or omission of the duties of his office, when occasioned by a deputy, in the same manner as for his own personal neglect or omission." Ill Rev Stats, c 125, § 13 (1955).

The plaintiff cannot utilize this section to further the allegations of his complaint which charged, not neglect

227

or omission, but intentional misconduct by the deputies. Section 16 imposes liability for the sheriff's disobedience to perform the command of any writ legally issued to him. This section is inapplicable since the deputies were not acting pursuant to a writ. Thus, there was no basis for recovery from Lohman.

 The parties agree that De Correvant's conviction of assault and battery by the magistrate constitutes a prima facie defense to his action for malicious prosecution despite the fact that he was afterwards found not guilty in the de novo trial. They further agree that this defense can be overcome by proof that the conviction was procured by false testimony, fraud, corrupt practices or unlawful means. (Conkling v. Whitmore, 132 Ill App 574 (1907); cf. McElroy v. Catholic Press Co., 254 Ill 290, 98 NE 527 (1912)). But they disagree whether the proof made and offered by the plaintiff at the trial of this case, as to the alleged false swearing of the defendants at his trial before the magistrate, overcame the prima facie defense of probable cause created by his conviction. The plaintiff's proof in this regard will be examined as to each of the remaining defendants.

██ In order to hold Gutilla liable, the plaintiff had to prove either that Gutilla initiated the criminal proceeding or that his participation in the proceeding was of so active and positive a character as to ·amount to advice and cooperation, Gilbert v. Emmons, 42 Ill 143 (1866). The plaintiff sought to establish the latter by pointing out an instance where Gutilla's testimony in the instant case differed from his prior testimony. From this the plaintiff concludes that the prior testimony was false and that it led to his conviction.

██ ██ The contradiction in Gutilla's testimony was very minor: before the magistrate he testified that a knuckle of his little finger was fractured in the fight at the station, but in the instant suit he stated that

228

the second knuckle on his left hand was injured. This inconsistency does not impeach his credibility and offers no basis for the conclusion that the substance of his testimony before the magistrate was false. Moreover, the complaint against De Correvant charged him with assault and battery at the tavern; Gutilla was not present at the tavern and, of course, did not testify about what occurred there. His testimony dealt with the subsequent happenings at the police station and was irrelevant to the offense charged and could not have been a factor in the conviction. Nor was there evidence that Gutilla counseled that De Correvant be prosecuted. In these circumstances the fact that he testified against De Correvant was not by itself sufficient to justify an inference that he was instrumental in the initiation of the prosecution. See Gooch v. Wachowiak, 352 Mich 347, 89 NW2d 496 (1958).

 Bergbreiter was on duty with Hawthorne when the tavern was inspected; he followed Hawthorne back to the bar when the bartender made what they thought were nasty remarks; he told De Correvant not to interfere as they took the bartender away; he came to Hawthorne's aid after he was grabbed by De Correvant, and assisted in subduing him; he testified against De Correvant before three judges, and his testimony generally corroborated Hawthorne's. However, we find but one inconsistency in his testimony and this would not warrant a jury in finding that his testimony before the magistrate was false or induced an erroneous decision. He did not arrest the plaintiff or sign the complaint against him and there is no evidence that he directly participated in causing the prosecution or advising it to be made. It was not error to direct a verdict as to him.

As to Hawthorne, the plaintiff contends that a comparison of the testimony which Hawthorne gave before the magistrate with his testimony in the Criminal

229

Court and in the present case reveals inconsistencies which rebut the prima facie defense. In addition, he argues that the rebutting evidence was improperly restricted by the trial court's erroneous exclusion of Hawthorne's previous testimony in the Criminal Court which narrated the events which led to his arrest. The trial court limited the plaintiff to an offer of proof as to much of this testimony. Hawthorne argues that the exclusion was proper because the discrepancies were minor and were insufficient proof that his testimony before the magistrate might have been false.

Want of probable cause was an indispensable element of the plaintiff's case (Hughes v. New York Cent. System, 20 Ill App2d 224, 155 NE2d 809 (1959)) and all the evidence of what took place at the time of and during the disturbance at the tavern was material to that question. Blumenfeldt v. Haisman, 30 Ill App 388 (1889). The excluded evidence would have demonstrated that in the subsequent trial Hawthorne contradicted his testimony before the magistrate in several particulars. The jury could have found that these contradictions impeached Hawthorne's credibility and fairly supported an inference that, in order to secure a conviction, his testimony before the magistrate was either a fabrication or a deliberate embellishment of what transpired. On the other hand, since approximately nine months elapsed between the plaintiff's arrest and his trial before the magistrate, and eighteen months between his arrest and the trial in the Criminal Court, and ten years between his arrest and the malicious prosecution suit, the inference that the discrepancies were due to Hawthorne's lapse of memory is also reasonable. Since it is the function of the jury to choose between conflicting, reasonable inferences, exclusion of Hawthorne's testimony was error. It was for the jury to determine after hearing the variations in his testimony whether or not he told the truth at the plaintiff's first trial,

and if he did not whether this led the magistrate to find the plaintiff guilty.

The judgments in favor °of Lohman, Gutilla and Bergbreiter will be affirmed; the judgment in favor of Hawthorne will be reversed and his cause remanded for a new trial.

Affirmed in part and reversed in part; the cause is remanded with directions.

SULLIVAN, P. J. and SCHWARTZ, J., concur.