JIMMY DENTON, Plaintiff-Appellee, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 83—3078

Opinion filed November 26, 1986.—Rehearing denied March 9, 1987.

Robert C. Johnson and Elizabeth Z. Lebaron, both of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellant.

Hayes & Power, of Chicago (John D. Hayes, Joseph A. Power, Jr., and David A. Novoselsky, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant, Allstate Insurance Company, appeals from a jury verdict entered in favor of the plaintiff, Jimmy Denton, in the amount of $185,000. The jury found defendant liable for malicious prosecution and awarded plaintiff $45,000 in compensatory damages and $140,000 in punitive damages.

In December 1977, Officer Victor Delia of the Chicago police department was assigned a warrant for plaintiff's arrest for nonpayment of multiple parking tickets. Delia performed a routine computer search and found a second outstanding warrant for plaintiff's arrest. The second warrant had been issued in April 1976 on a criminal complaint accusing plaintiff of the attempted theft of more than $150 from defendant. On December 27, 1977, plaintiff was arrested on both warrants. Unable to post bond, he spent the night in jail and was released the following morning on a recognizance bond. He subsequently appeared in court three times on the attempted-theft charge. The case was continued twice and, on February 21, 1978, the charge was stricken on the State's motion without a trial.

On April 7, 1978, plaintiff filed an action for malicious prosecution against defendant. Before the selection of the jury, plaintiff made a motion *in limine* to exclude from the jury all evidence relating to the multiple-parking-ticket warrant. The trial court sustained this motion. In June 1983, the case was tried before a jury, which returned verdicts in plaintiff's favor. Defendant's post-trial motion was denied, and defendant appeals. The issues presented for review are: (1) whether as a matter of law defendant can be found liable for malicious prosecution; (2) whether the trial court erred in submitting the issue of punitive damages to the jury; (3) whether the jury's verdict was contrary to the manifest weight of the evidence; (4) whether the trial court erred in excluding certain evidence offered by defendant and admitting certain evidence offered by plaintiff; (5) whether the trial court erred by improperly instructing the jury; (6) whether the trial court erred by withholding defendant's exhibits from the jury

while permitting plaintiff's photographic exhibits to be taken to the jury room; (7) whether a new trial is required because of remarks made by plaintiff's counsel in closing arguments; (8) whether the cumulative effect of the trial court's errors prejudiced defendant and denied it a fair trial, and (9) whether, if a new trial is not granted unconditionally, this court should enter an order compelling a remittitur because of an excessive damage award.

■■ Defendant first argues that the evidence presented at trial was insufficient as a matter of law to support the verdict. It therefore asks this court to vacate the jury verdict and enter judgment in its favor. Alternatively, defendant asserts that a new trial is warranted because the verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only if it is wholly unwarranted by the evidence or clearly the result of passion or prejudice. (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 458 N.E.2d 1331.) The relevant inquiry on appeal is whether the result reached is reasonable on the facts and evidence presented, not whether other conclusions are possible. *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 450 N.E.2d 363.

Plaintiff testified that on March 30, 1976, he went to one of defendant's offices with a friend to purchase automobile insurance. According to plaintiff, Louis Dodd, defendant's agent, completed the form and wrote in the binder section of the application that plaintiff was insured as of March 30, 1976, at 11 a.m. Plaintiff testified that the following day he went out of town, leaving his car parked behind his apartment building. When he returned on April 3, he discovered that his car was missing.

At 8 a.m. on April 3, plaintiff phoned the police and reported the car stolen. The theft report indicated that the car had been taken between 11 p.m. on April 2 and 7 a.m. on April 3. A Chicago police recovery report revealed, however, that the car had been recovered by the police at 5 a.m. on April 1. The ignition was removed, the battery was missing, the tires were switched, and there were minor dents and scratches. On April 7, Officer Daniel Chilla, an investigator with the Chicago police department, began an investigation of the auto-theft report. Chilla testified that he telephoned plaintiff to ask for his explanation of why the car was reported stolen after it already had been recovered. Plaintiff was unable to provide the officer with an explanation regarding the discrepancy. At trial, plaintiff denied ever speaking to Chilla. Nevertheless, Chilla testified that he subsequently phoned Louis Dodd to ask if he had any information that might help him with the case. Dodd told him that his records indicated that plaintiff was

insured as of 9 a.m. on April 1, 1976. Chilla then called one of defendant's claims agents and advised him of the facts known to him at that time. Chilla stated that the agent told him that the situation sounded like a fraud, and defendant would cooperate with the police department in the investigation. The claims agent indicated that, because of the circumstances, defendant would delay payment of plaintiff's claim.

On April 27, 1976, Chilla spoke to an assistant State's Attorney about the matter and was given approval to obtain a warrant for plaintiff's arrest. Officer Chilla swore out and signed a criminal complaint against plaintiff for attempted theft of over $150 from defendant. He obtained a warrant for plaintiff's arrest. Chilla informed plaintiff's attorney that he had obtained a warrant, but the attorney was unable to persuade plaintiff to turn himself in. The police were unable to find plaintiff to arrest him and ultimately suspended their search.

When plaintiff called defendant on April 3, 1976, to inform it of the theft of his car, he gave a recorded statement over the phone regarding the details of the incident. He later received a call informing him that the car had been recovered and went to see the car. After he identified the car as his, plaintiff contacted agent Dodd. Dodd subsequently referred plaintiff to John Byrne, claims manager, who told plaintiff that his claim would not be honored because of some question as to when plaintiff purchased the automobile insurance. Although plaintiff's copy of the insurance form indicated that the insurance was binding as of March 30, defendant's records showed that plaintiff purchased the insurance on April 1, 1976. Plaintiff filed a complaint with the Illinois Department of Insurance.

On April 20, defendant received a copy of a complaint which plaintiff had filed with the Department of Insurance. It continued to investigate the claim. After learning that plaintiff's prior insurance had been cancelled and that the Chicago police department had recovered the car four hours before the date and time of the application as shown in defendant's records, defendant decided to disclaim coverage. The letter of disclaimer was mailed to plaintiff on April 23. Plaintiff went to defendant's office on that same day and showed an agent his copy of the insurance application which showed an effective date of March 30. A copy was sent to the claims manager, who then scheduled an appointment with plaintiff for April 28. On that date, plaintiff went to one of defendant's offices and gave the claims manager two written statements and a total-theft affidavit. Defendant eventually settled the matter with plaintiff and paid his disputed claim in full. In return, plaintiff released defendant from all claims relating to his loss.

On June 16, 1976, defendant closed its file on plaintiff's claim. The testimony at trial indicated that, in August or September 1976, defendant informed the police that plaintiff's claim had been paid in full. Plaintiff subsequently filed his malicious prosecution action against defendant.

■ In order to state a cause of action for malicious prosecution, a plaintiff must demonstrate that the following elements exist: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such a proceeding; (5) the presence of malice, and (6) damages resulting to plaintiff. (*Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 211 N.E.2d 286.) Defendant contends that plaintiff failed to prove legal causation, absence of probable cause, malice, and damages. Defendant also complains that, in urging liability for any false information given regardless of knowledge or intent, plaintiff is seeking to convert the intentional tort of malicious prosecution into a strict liability case. We find defendant's arguments persuasive.

■ Illinois law provides that, in order to be liable for malicious prosecution, a defendant either must have initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation. (*De Correvant v. Lohman* (1967), 84 Ill. App. 2d 221, 228, 228 N.E.2d 592.) In addition, the attribution of police action to a defendant requires that the defendant requested, directed or pressured an officer into swearing out a complaint for plaintiff's arrest, or that defendants knowingly gave false information to the police. *Geisberger v. Vella* (1978), 62 Ill. App. 3d 941, 379 N.E.2d 947.

Plaintiff contends that, nevertheless, even if defendant was not responsible for the institution of criminal proceedings, it was responsible for their continuation and therefore is liable. (*Friedes v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295, 211 N.E.2d 286.) In support of his position, plaintiff cites *Devlin v. Greiner* (1977), 147 N.J. Super. 446, 471, 371 A.2d 380, 394, in which the court stated: "One who, without probable cause, advises or assists another person to begin a proceeding, should not be exempted from liability simply because his name does not appear on the complaint. This is particularly so where it is alleged that the intentional rendering of false information actually induced the lawsuit."

We do not believe that defendant was responsible for the initiation

of the proceedings against plaintiff. The information given by defendant's agent regarding the date and time of plaintiff's application for insurance was not "information of another's supposed criminal misconduct." (See Restatement (Second) of Torts sec. 653, Comment *g*, at 409 (1977).) The agent merely provided information in response to questions asked by the police. There was no evidence presented that the agent knew his statements were false or incriminating when he made them. Further, we note that the complaint was filed and the subsequent arrest made as the result of a police investigation; we find no evidence that defendant requested, directed or pressured the police into filing a complaint or, as stated, that defendant knowingly gave the police false information. *Geisberger v. Vella* (1978), 62 Ill. App. 3d 941, 379 N.E.2d 947.

We further believe that defendant was not responsible for the continuation of the criminal proceedings, as plaintiff suggests. Because defendant did not immediately report its settlement of the claim with plaintiff does not mean that defendant actively encouraged or participated in the proceedings. (*De Correvant v. Lohman* (1967), 84 Ill. App. 2d 221, 228 N.E.2d 592.) In discussing defendant's liability for the continuation of the proceedings, plaintiff admits that liability should be imposed where the defendant takes an "active part in [the] prosecution after learning there is no probable cause for believing the accused guilty" and where its "share in continuing the prosecution [is] active, as by insisting upon or urging further prosecution." (See Restatement (Second) of Torts sec. 655, Comment *c*, at 414 (1977).) We do not believe that defendant took such an active part in the case before us. Further, the remainder of this comment provides:

"The fact that he initiated the proceedings does not make him liable under the rule stated in this Section merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact." Restatement (Second) of Torts sec. 655, Comment *c*, at 414 (1977).

Plaintiff further urges this court to impose an affirmative obligation upon one who previously has provided information to a prosecuting authority but later finds that the information is questionable or doubtful. Plaintiff supports this position with reference to *Clarke v. Montgomery Ward & Co.* (4th Cir. 1962), 298 F.2d 346, 348, where the court stated:

"A person who places before a prosecuting officer information

upon which criminal proceedings are begun, and who later acquires additional information casting doubt upon the accused's guilt, should be under an obligation to disclose his discovery to the prosecutor. It should be no defense that the accuser acted in good faith in initiating the prosecution, if he remains silent and allows it to go on when he later learns that he was in error."

We do not agree with plaintiff that the circumstances before us are similar to those described by the *Clarke* court. The evidence in this case reveals that the police already were suspicious when plaintiff reported his car stolen several days after it already had been found, and that it was not only information from defendant upon which the criminal proceedings were based. Further, there was no finding that defendant knew that the information it provided was in error. Rather, there was a discrepancy on plaintiff's application due to defendant's agent improperly completing the application. We therefore do not believe that defendant breached any duty to plaintiff which would somehow make it responsible for the institution or continuation of the proceedings initiated by the police against plaintiff.

■ Defendant also contends that plaintiff failed to demonstrate the absence of probable cause for his arrest. We do not believe the issue of probable cause relates to defendant's actions since defendant bore no responsibility for such a determination. Nevertheless, we examine this contention to determine if defendant in any way could properly have been found liable. Probable cause will justify the institution of a criminal prosecution and will prevent liability for malicious prosecution if there exists such facts, in the mind of the prosecutor, which would lead a man of ordinary caution and prudence to believe or entertain an honest and sound suspicion that the person accused is guilty of the offense charged. (*Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 116, 367 N.E.2d 203; *Carbaugh v. Peat* (1963), 40 Ill. App. 2d 37, 47, 189 N.E.2d 14.) We believe that such a suspicion existed in the instant case.

The police initially received a report of a stolen car which they already had located several days before the report was taken. Plaintiff did not provide the police with an explanation for the discrepancy when asked. On this basis alone, there could exist a reasonable suspicion in the minds of the police that a crime had been committed. Additionally, defendant's agent informed them that the car was uninsured when it was recovered; yet, plaintiff reported the theft at a time when the car allegedly would have been covered. At trial, plaintiff explained that he left town on March 31 and did not return until

April 3. He stated that someone in his apartment building reportedly had seen the car on April 2; however, plaintiff later realized that the man was talking about another car. Nevertheless, plaintiff did not provide this information to the police or to defendant until trial even though such information possibly could have prevented the subsequent complaint from being sworn out.

Plaintiff argues that defendant did not have probable cause to "institute" the proceeding because the evidence demonstrated that (1) one of defendant's agents lied to the police officer investigating what he believed to be a crime against defendant; (2) another of defendant's agents told the officer that, apprised of the facts, it "sounded like fraud" to him; (3) the agent told the officer that defendant would cooperate in the prosecution; (4) defendant deliberately withheld information that it had decided to pay plaintiff's claim, and (5) defendant appeared in court to give additional "aid and encouragement" in the prosecution. We believe that plaintiff overstates his case. First, there was no evidence presented that defendant's agent lied to the police in giving information regarding plaintiff's insurance. The evidence merely demonstrated that the agent failed to properly complete plaintiff's insurance application with the result that defendant's copy and plaintiff's copy had different dates as to when the insurance would take effect. There was no determination that the agent intentionally or deliberately gave the wrong date or, alternatively, that he had an improper motive at all when he gave the information to the police. Second, when another of defendant's agents stated that the situation "sounded like fraud" to him, he merely was responding to the facts as he knew them to be at the time. Based on the situation presented, he offered defendant's cooperation. In addition, although defendant did not immediately inform the police that it paid plaintiff's claim, we can find no evidence that defendant deliberately withheld this information from the prosecutor, as plaintiff suggests. We again emphasize that the police were conducting an investigation on a matter upon which there was a great deal of conflicting information. However, there was no evidence that defendant ever refused to give the police any requested information during the inquiry. The notion that defendant appeared in court to give further "aid and encouragement" is similarly without merit. Further, the cases cited by plaintiff in support of his "probable cause" argument are distinguishable because they are cases in which those accused of malicious prosecution have acted affirmatively to bring information regarding a plaintiff's alleged conduct to the prosecuting authorities. (See, *e.g., Neufeld v. Rodeminski* (1893), 144 Ill. 83, 32 N.E. 913; *Calef v. Thomas* (1876), 81 Ill. 478;

*McCutcheon v. Moran* (1981), 99 Ill. App. 3d 421, 425 N.E.2d 1130; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 367 N.E.2d 203.) Thus, we cannot say that there was a complete absence of probable cause to swear out a warrant for plaintiff's arrest in the matter.

■■ Defendant next argues that there was no evidence which would directly or inferentially demonstrate that defendant's agents or employees acted with malice toward plaintiff. Plaintiff initially responds that this argument has been waived by defendant's failure to offer authority in support of its position. (*Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 649, 459 N.E.2d 1382.) Alternatively, plaintiff argues that the evidence and case authority establish that defendant's argument is frivolous. We disagree in both respects. The *Piper* court indicated that an appellant has a positive duty to support each point it makes in an appeal with contentions, citations to authorities, and references to pages of the record. If the appellant fails to argue a point, then it is considered waived and cannot be raised in a reply brief, oral argument or petition for rehearing. (121 Ill. App. 3d 644, 649; see also 87 Ill. 2d R. 341(e)(7).) We believe that defendant has properly argued its point. Defendant's brief makes reference to both the common law and trial records. Defendant argues the facts presented and also discusses plaintiff's alleged recognition of the standard to be utilized by the jury for determining whether malice existed. Defendant has not waived its contention merely because it did not cite case authority. Rather, this situation can be distinguished from that in *Piper* where the court found that the appellant waived an issue because the only discussion on the particular point was a reference to a prior argument. In the instant case, in contrast, defendant has adequately presented the issue.

■■■ Further, we find that defendant correctly states that malice was not established by the record before us. Malice can be inferred where there is want of probable cause when the circumstances which exist are inconsistent with good faith by the prosecutor and where such want of probable cause has been clearly proved. (*Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 117, 367 N.E.2d 203, citing *Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 155 N.E.2d 809.) Where probable cause does exist, malice may not be inferred. (*Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 367 N.E.2d 203.) Even plaintiff recognized these principles by submitting the following instruction regarding malice:

> "Where there is an entire lack of probable cause, malice may be presumed to have been the motive actuating the prosecu-

tion. While malice may be inferred from want of probable cause, any presumption of malice ensuing thereby may be overcome by evidence to the contrary. Malice may not be inferred from a lack of probable cause where there is absolutely no other evidence of malice." (Plaintiff's instruction No. 15.)

We also do not find any other evidence that malice existed as a matter of law. Plaintiff emphasizes that malice can be found where one is prosecuted with any motive other than that of bringing a guilty party to justice. (*Robinson v. Econ-O-Corporation* (1978), 62 Ill. App. 3d 958, 961, 379 N.E.2d 923, citing *Carbaugh v. Peat* (1963), 40 Ill. App. 2d 37, 47, 189 N.E.2d 14.) He argues that malice existed because defendant engaged in some type of conspiratorial conduct for its own private gain and advantage. We believe this argument to be without merit. Defendant paid to plaintiff the full amount of his disputed claim so that no gain or advantage existed for defendant in this regard. Further, defendant merely had determined that its agent did not follow proper procedures in filling out plaintiff's application for insurance. The fact that defendant suspended rather than terminated its employee for failing to follow company policy had no bearing on the existence of any alleged malice on the part of defendant toward plaintiff. We can find no evidence, as plaintiff suggests, that defendant was attempting to "cover-up" the actions of its agent by not providing full, complete, and up-to-date information to the police. Moreover, there was no evidence that any relationship existed between plaintiff and the sales agent prior to the time plaintiff applied for insurance which might provide a basis for a finding that malice existed on the part of defendant. A review of the record fails to disclose that defendant or any of its agents or employees acted with the requisite malice in this case.

Defendant finally contends that plaintiff failed to establish a cause of action for malicious prosecution because he did not establish that any damages he incurred resulted from defendant's conduct. Plaintiff again urges this court to find that defendant has waived this argument for failure to offer supporting authority. (*Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 649, 459 N.E.2d 1382.) We believe that defendant has adequately set forth its argument before us. Defendant does not argue that plaintiff suffered no damages; rather, defendant simply asks this court to recognize that it was not the cause of any damages resulting to plaintiff. We agree with plaintiff that, where a malicious prosecution suit is based on the institution of criminal proceedings, a plaintiff need not make a showing of special injuries such as evidence of arrest or the seizure of property. (*Voga v.*

*Nelson* (1983), 115 Ill. App. 3d 679, 682, 450 N.E.2d 1364.) We also agree that attorney fees which are incurred in defending a criminal prosecution may be recovered where the suit is based on the institution of the criminal proceedings. (115 Ill. App. 3d 679, 450 N.E.2d 1364.) Nevertheless, plaintiff maintains that he was arrested and forced to go to court on a number of occasions to answer to criminal charges which were caused and continued by defendant. We have already addressed this issue in our prior discussion and do not agree with plaintiff's contention on the facts in this case. Additionally, the record indicates that it was plaintiff who appeared in court and, on at least one occasion, requested that the case be continued so that he could retain an attorney.

Thus, in summary, we do not believe that plaintiff has established the requisite elements for a malicious prosecution claim. Therefore, the trial court erred in not having entered judgment notwithstanding the verdict. Because of our decision, we need not address the other issues defendant raises on appeal.

For all the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

RIZZI, P.J., and McNAMARA, J., concur.