**James T. Franklin, Plaintiff-Appellant, v. Grossinger Motor Sales, Inc., Defendant-Appellee.**

**Gen. No. 52,659.**

First District.

March 20, 1970.

Rehearing denied April 22, 1970.

STOUDER, J., dissenting.

 

Kreisman & Epstein, of Chicago (David S. Kreisman, of counsel), for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (John F. McClure and Michael R. Turoff, of counsel), for appellee.

ALLOY, J.

The action before us was instituted as an action for malicious prosecution of a civil case. The trial court directed a verdict in favor of defendant Grossinger Motor Sales, Inc., at the close of plaintiff James T. Franklin's case. Following denial of a post-trial motion, the cause was appealed to this Court.

On October 1, 1960, plaintiff had gone to defendant's place of business and agreed to purchase a 1960 Pontiac. The agreement involved a $400 trade-in allowance on the automobile then owned by plaintiff, which was taken as a trade, and a lien balance of $2,600 due on the old automobile was to be assumed and paid by defendant company. Plaintiff was, by the terms of the bill of sale, to pay $500 in cash, leaving a balance due defendant motor company of $3,345 which was payable over a three-year period, with the first installment being due on November 12, 1960. According to plaintiff's testimony, after he signed the note and agreement, he paid the $500 down payment to Irwin Grossinger. Irwin Grossinger testified that the $500 was not paid, as he had forgotten to ask for it. After plaintiff left, driving the automobile, Irwin Grossinger instructed an employee to

393

contact plaintiff and to obtain the $500 down payment. Plaintiff, however, refused to pay the $500, insisting he had already paid it. On October 7, 1960, defendant repossessed the Pontiac which plaintiff had purchased, but plaintiff thereafter went to the Grossinger Motor Sales and took possession of his car again. Plaintiff thereafter consulted an attorney and returned the automobile to defendant company. The Pontiac remained in the possession of defendant. Defendant asserted it would store the car until the plaintiff came in with the $500. Defendant also insisted that the company had the right under the written agreement to repossess the car if the $500 was not paid.

Defendant company then turned the papers over to the attorney for the company instructing him to recover the loss but defendant gave the attorney no specific instructions as to what to do. On October 17, 1960, defendant company by its attorney filed a confession of judgment action against the plaintiff. This action was on the note which plaintiff had signed on October 1, 1960, and the judgment was entered on October 18, 1960, for $1,357.50 and costs. The first payment on October 1, 1960 note was not due until November 12, 1960. Plaintiff thereafter retained an attorney to represent him in connection with the judgment, and on November 17, 1960, plaintiff moved to vacate the judgment obtained by confession. Following several continuances, such judgment was vacated. On April 4, 1961, the suit was dismissed for want of prosecution.

Shortly after the judgment by confession was obtained, the attorney for defendant-company had execution issued, and such execution was served on plaintiff. No money was withheld or paid, nor was any property attached as a result of such execution. Plaintiff's employer, Peer Cartage Co., received a "Wage Demand in Garnishment" on October 20, 1960, which had been mailed by the attorney for the defendant Grossinger

Motor Sales. The evidence disclosed that plaintiff had worked for Peer Cartage Co. since August of 1956 and during this period, although employed by Peer Cartage, he worked at the Webcor Plant since Peer Cartage had contracted to furnish drivers to Webcor. Joseph Bielek, an employee of Webcor, was the supervisor and director of plaintiff's activities. Plaintiff worked alone as a trucker.

On October 21, 1960, plaintiff was notified by Mr. Gade of Peer Cartage that his employment was terminated. In testifying in the case, as plaintiff's witness, Mr. Gade stated that he was told to terminate the employment by Mr. Pyre, his superior. He testified that Peer Cartage did not honor "wage demands" but rather told employees that it was up to employees to work such problems out. No wages were withheld from plaintiff by Peer Cartage. Mr. Gade further testified that plaintiff would not have been allowed to continue his employment even if the wage demand had not been served, as his employment would have been terminated for "other things." He further testified that the reason that plaintiff was fired was because he stopped for breakfast before going out on a run, in violation of union rules. Mr. Gade stated that the information he had as to plaintiff's conduct was not from his own observations, but was rather communicated to him by Mr. Pyre, who was in the hospital when the case was tried. Mr. Gade, however, did testify expressly that the wage demand was *not* one of the reasons for terminating plaintiff's employment. Mr. Bielek of Webcor, who had supervised the activities of plaintiff for four years, testified that he had no complaints about plaintiff's work and had never heard of any complaints. He further stated that he had no power to fire employees of Peer Cartage but he could demand that they be removed from working for Webcor. Following the termination of his employment by Peer Cartage on October

21, 1960, plaintiff remained unemployed from that date until he was rehired by Peer Cartage on January 13, 1961.

The action which was instituted by plaintiff against Grossinger Motor Sales, Inc., was for malicious prosecution of a civil case, based on the confession of judgment case which was later dismissed for want of prosecution. It was alleged specifically by plaintiff that, as a direct result of the service of the wage demand, plaintiff's employer terminated his employment. It was also recited that defendant's action in failing to pay Mercantile Discount Corporation the amount of $740.92 had wrongfully resulted in a judgment as against plaintiff. On May 1, 1961, Mercantile Discount Corporation, which had financed plaintiff's Cadillac which had been traded in on the purchase of the Pontiac, obtained a judgment by confession against plaintiff for $1,474, which amount was later reduced by agreement to $740. That judgment was still unsatisfied so far as the record discloses. The parties recognize the obligation of defendant as to payment of the Mercantile Discount Corporation obligation was not an appropriate basis for maintenance of a malicious prosecution action and that matters relating to defendant's confession of judgment and wage demand referred to herein would be the sole basis for maintenance of such action.

 Action for malicious prosecution of a civil proceeding is not favored by the courts of this State on the basic ground that courts should be open to litigants for settlement of their rights without fear of prosecution for calling upon the courts to determine such rights (Schwartz v. Schwartz, 366 Ill 247, 8 NE2d 668). In an action for malicious prosecution plaintiff is required to show that defendant began the proceeding against plaintiff with some ulterior purpose other than seeking the benefit that it would receive from a decision in its

favor in such action. It must be shown in such type of action that defendant originally brought its action in order to force plaintiff to do something other than would normally be required as a result of a claim asserted, or that defendant anticipated some result apart from merely winning or other normal procedure in the lawsuit. As stated in Ammons v. Jet Credit Sales, Inc., 34 Ill App2d 456, 462, 181 NE2d 601:

> "Abuse of process (or malicious abuse of process) is the misuse of proper process to effect an object not within its proper scope. It differs from malicious use of process in that the latter is the starting of process without probable cause, a prosecution upon a demand or accusation that has no foundation in fact."

The court in the Ammons case also pointed out that the mere institution of a proceeding, even with a malicious motive, does not constitute an abuse of process. There must be both the existence of an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. In the cause before us, the action of defendant was clearly to recover the amount it claimed to be due to defendant and there was no showing of an ulterior motive in bringing the action.

■ ■ We, therefore, have before us an action for malicious prosecution of a civil suit. To sustain such action for malicious prosecution of a civil suit, the following are required to be shown: (1) the institution of civil proceedings by defendant, (2) termination of such proceedings in favor of plaintiff, (3) want of probable cause for the proceeding, (4) malice on part of defendant in bringing such proceedings, and (5) special injury to plaintiff as a result of such action (Ammons v. Jet Credit Sales, Inc., 34 Ill App2d 456, 181 NE2d

601; March v. Cacioppo, 37 Ill App2d 235, 244, 185 NE 2d 397; Carbaugh v. Peat, 40 Ill App2d 37, 47, 189 NE2d 14; Smith v. Michigan Buggy Co., 175 Ill 619, 51 NE 569). In the case before us, while there may be some areas of doubt as to want of probable cause or malice (Freides v. Sani-Mode Mfg. Co., 33 Ill2d 291, 296, 211 NE2d 286; Vasquez v. Jacobs, 23 Ill App2d 457, 464, 163 NE2d 230), the real question before us, and the basis upon which the court directed a verdict, stems from the asserted failure of plaintiff to prove "special injury" as required to maintain the action.

██ ██ The plaintiff has asserted in the complaint that his credit was injured and for a time his property was subject to the lien of the judgment. The courts of this state have indicated that this alone is not "special injury" of the character required in a case based upon malicious prosecution (Schwartz v. Schwartz, 366 Ill 247, 8 NE2d 668). In the Schwartz case the court pointed out (at page 252):

> "While the charge is that because of this judgment against him his credit was injured and his property became subject to a lien for the judgment, yet such are characteristics of all money judgments in ordinary civil cases. There is no evidence that appellant attempted to deal with his property during the few days in which this judgment was in existence. There is no evidence of special loss to him of any character, over and above the ordinary expense and trouble attendant upon the defense of an ordinary civil suit, and therefore, under the rule announced in Smith v. Michigan Buggy Co., supra, and other cases herein cited, there is no showing of special damages. General damages are such as the law implies and presumes to have accrued from the wrong complained of. Special damages are such

398

as actually, but not necessarily, are sustained, and so are not implied but must be proved."

As indicated in the Schwartz case, special damage of the character under consideration in the case before us must actually be proved and cannot be implied.

In March v. Cacioppo, 37 Ill App2d 235, 185 NE2d 397, a confession of judgment under a lease was involved. The lease had not been signed by the lessees and although there was no acceleration clause, judgment was confessed for rent of $1,050 which was the amount provided to be paid under the lease terms to the end of the period of the unsigned lease. Only $175 was due in rent at the time of confession of judgment. Defendant then actually garnished plaintiff's bank account and deprived plaintiff from the use of $1,397.50 in his bank account from the middle of November 1960, until January 5, 1961, when the judgment was reduced to $175 and costs. The court there allowed a recovery for malicious prosecution of a civil suit, and found that all of the required elements for such action were present. In finding the required "special damage" or "injury" the court stated (at 245):

"The wrongful garnishment was an unwarranted seizure of property not done to secure the defendant's debt, and the whole course of action, judgment and garnishment, constituted special injustice to the plaintiff not resulting in all suits prosecuted for like causes of action."

The conditions referred to in the case of March v. Cacioppo, supra, were not present in the cause before us.

■ We should observe that defendant in this cause points out that even if plaintiff had shown that his discharge resulted from defendant's action it would not justify maintenance of the malicious prosecution action.

We do not believe it is necessary to decide this issue in view of the record in this case. Nor do we believe that we would be justified in departing from Illinois precedents which emphasize that the "special injury" is essential to the maintenance of malicious prosecution actions. As stated in Caspers v. Chicago Real Estate Board, 58 Ill App2d 113, 119–20, 206 NE2d 787, the Illinois policy established in Schwartz v. Schwartz, supra, that courts should be opened to litigants for settlement of their rights without fear of prosecution for calling upon the courts to determine such rights, should be adhered to. It is pointed out in the Caspers case:

> "The annoyance and distress suffered by a person of integrity, and good reputation in defending what he believes to be an unjust action is found in most litigation, including suits to collect debts, in which category belongs the basic action against plaintiff's corporation."

It is clear that if plaintiff fails to establish a special injury resulting from acts of defendant, as found by the trial court, the present action cannot be maintained.

It is argued by plaintiff that circumstantial evidence consisting of the closeness of the time between the time of the service of the wage demand and the termination of his employment, plus the fact that Peer Cartage Co. did not honor wage demands, is sufficient circumstantial evidence to establish that plaintiff had lost his job as a result of the wage demand. He argues that this is reinforced by the testimony of Mr. Bielek of Webcor, who stated that he knew of no reason why plaintiff should have been discharged. Direct evidence on the matter, however, consisted of the testimony of plaintiff's own witness, Mr. Gade who testified that the wage demand had nothing to do with plaintiff's loss of his job. When Mr. Gade was called as a witness on behalf of plaintiff in the action he testified as follows:

400

Q. "How many days after the service of this was Mr. Franklin's employment terminated?"
A. "I couldn't tell you now."
Q. "Could it have been the next day?"
A. "I don't know, sir."
Q. "Would he have been allowed to continue his employment at Peer Cartage had this Wage Demand not been served?"
A. "No."
Q. "You mean he would have been fired anyway?"
A. "He would have been terminated."
Q. "Why would he have been terminated?"
A. "For other things that pertain not to this case."
Q. "For any one single thing?"
A. "For many things."
Q. "Of which notice of the Wage Demand was one?"
Mr. McClure: "Objection."
The Court: "Objection will be sustained."
By Mr. Krupa:
Q. "Did this enter into the conflict at any rate as one of the reasons for which he was fired?"
A. "No."

■ It is clear that plaintiff's witness, Mr. Gade, specifically established that the wage demand was not one of the reasons for terminating plaintiff's employment. The conclusion of the trial court that plaintiff failed to prove an essential element to establish a prima facie case was, therefore, proper. On the basis of the record we would not be justified in reversing the action of the trial court.

The judgment of the Circuit Court of Cook County will, therefore, be affirmed.

Affirmed.

RYAN, P. J., concurs.

## DISSENTING OPINION

STOUDER, J.

I do not agree with the majority of the court. My disagreement is limited to the narrow issue upon which the result reached by the majority rests, namely that evidence of special injury was insufficient to require the issue to be submitted to the jury. In my opinion, there is ample evidence in the record supporting the contention that plaintiff sustained a special injury as a direct result of defendant's misconduct.

If plaintiff lost his job as a result of the service of the wage demand on plaintiff's employer by defendant, the plaintiff has sustained a special injury and the majority of the court does not dispute this conclusion. The question posed is whether or not the evidence tends to show this cause and effect relationship.

The evidence is substantially undisputed, (1) that a wage demand was served on plaintiff's employer, (2) that plaintiff's employer did not honor wage demands, (3) that plaintiff was discharged shortly after the wage demand was served and (4) plaintiff's supervisor, the only person testifying having personal knowledge thereof, indicated that plaintiff's job performance was satisfactory and that the (supervisor) had made no complaint with respect thereto.

The above evidence standing alone amply tends to prove the cause and effect relationship, and in my opinion is quite sufficient to support a jury's verdict in favor of plaintiff. The prima facie case so presented required that the issue be resolved by the jury.

The majority opinion ignores the legal effect of plaintiff's evidence and instead relies on an assertion of Gade (an employee of plaintiff's employer) that plaintiff was not discharged as the result of the wage demand. Both the trial court and the majority of this court in accepting the statement of Gade as conclusive have improper-

402

ly weighed the evidence and substituted their opinions on an issue which ought to have been resolved by the jury.

It also appears according to the majority opinion, that the only evidence which could support the cause and effect relation in question would be direct testimony that plaintiff's employer told plaintiff or someone else that plaintiff was discharged solely on account of the service of a wage demand. This to me places an intolerable burden upon the plaintiff and as indicated in Freides v. Sani-Mode Mfg. Co., 33 Ill2d 291, 211 NE2d 286 (dealing with probable cause) no such burden is required or necessary. Employers may or may not give reasons for the discharge of employees, and even where a reason is given, it may or may not be true. That other evidence might be more persuasive if it existed ought not to deprive a litigant of the probative value of that evidence which is available and which tends to prove the issue involved.