William Hughes, Appellant, v. New York Central System, Chicago River & Indiana Railroad, W. R. Manning and G. M. Howard, Appellees.

Gen. No. 47,308.

First District, First Division.

January 26, 1959.

Released for publication February 19, 1959.

225

Clarence M. Dunagan, of Chicago, for appellant.

Marvin A. Jersild, Charles I. Hopkins, Jr., Thomas F. Tobin, Alvin E. Domash, for defendants-appellees.

JUSTICE DEMPSEY delivered the opinion of the court.

This is an action for malicious prosecution and false imprisonment. The New York Central System was dismissed. One verdict, against the Chicago River & Indiana Railroad and its employees, W. R. Manning and G. M. Howard, assessed actual damages at $70,000; another, against the railroad only, was for $5,000 punitive damages. Judgments upon these verdicts were vacated when the court sustained the defendants' post-trial motion. An order was entered granting judgment to the defendants notwithstanding the verdicts and

granting them a new trial if the judgment were reversed.

The plaintiff appeals from this order.

William Hughes had been employed by the Chicago River & Indiana Railroad for twelve years. On the night of September 8th and early Sunday morning, September 9, 1951, he was the conductor in charge of a five-man crew making up a freight train on the defendant's tracks in the stockyards district in Chicago. He and James Dorsch and John Casper, who were switchmen under his supervision, took three cartons containing small tables from a boxcar of the train. They were arrested by agents of the railroad, questioned, turned over to the Chicago police, and charged with larceny. Dorsch and Casper pleaded guilty in the Municipal Court; Hughes was indicted, tried and acquitted.

Hughes testified that it was not his intention to steal his carton; that it was almost falling out of the car, and he took it as a safety measure to prevent it from "knocking down a man if he happened to be on the right of way"; that he placed it adjacent to the tracks in a lighted area near a shanty used for the storage of railroad equipment; that he was on his way to telephone the yard office about the packages, but was prevented from doing so because of his immediate arrest by Edward Doyle and William Eglar, agents of the railroad, who were hiding in the shanty. He said that on a previous occasion he had found boxes which had fallen from a car, had put them aside and had notified the railroad police, and that this was the customary practice.

It was about 1:00 a. m. when Hughes was arrested. He said Doyle held him at pistol point for 45 minutes; after this he was taken to some building in the vicinity where he was kept an hour or two; then he was transferred to an office of the railroad, questioned by the defendants Manning and Howard, a captain and a lieu-

tenant of the railroad police until about 9:00 or 10:00 a. m., when he was taken to a police station. A few hours later, at the station, he signed a statement in the presence of Manning, Howard and the superintendent of the railroad, which was similar to his subsequent testimony; in it he acknowledged removing the merchandise without authority. He testified he was not permitted to inform his wife of his whereabouts. He gave permission for his home to be searched, which was done by Howard and the city police prior to his being released on bond late Monday afternoon, September 10th. It appears he had a good record with the railroad, and there was testimony that he bore a good reputation.

The defendants meet this evidence with the blanket assertion that it is not worthy of belief; they maintain the plaintiff failed to prove his case because it is based on his own testimony; that this was completely discredited and should not be considered. Although the record discloses several contradictions, we cannot say his testimony is so inherently improbable that we would be justified in disregarding it.

■ In ruling upon a defendant's motion for judgment notwithstanding the verdict the court must determine if there is evidence, or reasonable inferences from that evidence, which, taken in the light most favorable to the plaintiff, sustains his complaint. If there is, the motion must be denied irrespective of contrary evidence or the weight of the evidence. Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300. It is necessary to consider the application of this rule to each count of the complaint.

■ Malice is one of the elements which must be proved in a suit for malicious prosecution. Brandt v. Brandt, 286 Ill. App. 151. The plaintiff bases his proof of malice upon the testimony related, plus inferences drawn from his being prosecuted for grand larceny while Dorsch and Casper were charged with petit lar-

ceny, and from a lack of probable cause for his prosecution.

 The three original complaints were sworn to by Howard. Each defendant was accused of larceny of property valued at $100. Dorsch and Casper agreed to plead guilty to a misdemeanor. Accordingly, the state's attorney, with the consent of the defendants, redrafted those complaints and changed the amount of the larceny to $14.50. Howard then swore to the new complaints. Hughes pleaded not guilty and was bound over to the grand jury. The plaintiff argues that Howard's swearing the same property was worth $100 in the complaint against him and worth a lesser amount in the complaints against the others, reveals malice and a desire to injure him by subjecting him to a trial for a felony and a possible penitentiary sentence. We believe no such conclusion is warranted. Petit larceny is included in grand larceny. Reducing felony complaints to misdemeanors is normal practice and if it were not done in suitable cases many hardships and injustices would ensue. In fact, the pleas of guilty gave the defendants more reason to continue with the prosecution. It was established that a crime had been committed, and two of the three who appeared to be implicated had been convicted.

 Hughes' position in reference to want of probable cause is that there was no reasonable basis for his arrest; and that Manning and Howard had no excuse for preferring charges against him, because they knew him to be a railroad employee with a good record, had heard his explanation of the events preceding his arrest and could have substantiated his having handled merchandise similarly before. He asserts that malice may be inferred from the absence of probable cause. There are cases which support this argument; there are cases which hold the opposite, and there are cases which state that malice sometimes may be inferred. Winans v. Congress Hotel, 227 Ill. App. 276; Ferrell v. Living-

229

ston, 344 Ill. App. 488; Shelton v. Barry, 328 Ill. App. 497; Glenn v. Lawrence, 280 Ill. 581; Harpham v. Whitney, 77 Ill. 32; Kaley v. Hulsman, 319 Ill. App. 219. After a review of many cases we are of the opinion that malice is not a legal presumption which can be inferred from the mere lack of probable cause. Whether malice may be inferred depends upon the facts in each case. It could be inferred, for example, if it were established that the prosecutor had a motive other than one of bringing a guilty party to justice, or if the prosecution were so devoid of merit that its very baselessness would suggest a wanton purpose.

If there were a lack of probable cause the evidence in this case is not of the character from which malice can be deduced. Moreover, we do not believe there was a want of probable cause. The plaintiff's testimony further disclosed that he and Dorsch removed two of the cartons when the train paused to await the throwing of a switch before proceeding to another yard just three or four blocks away. The yardmaster's office and the main offices of the railroad were located there and were open twenty-four hours a day. They got off the train as it made this stop, waited until the open car came up to them, took two cartons, carried them around the rear of the train and put them in the same place the third one had been set, apparently by Casper. This was some two blocks from where Hughes had parked his auto. He said this was the first time he had seen the third box. He did not get on the train again and admitted he had no intention of doing so. Although Hughes was the conductor he made no effort to close the door of the car or to push the boxes back into place, was unconcerned at finding another carton on the opposite side of the tracks, did not reboard the train which would have taken him near the offices, and gave no instructions to any member of his crew to report to the offices.

230

 Probable cause exists if the prosecutor is influenced by a state of facts which would lead a man of ordinary caution and prudence to entertain a strong and honest suspicion or belief that the person prosecuted is guilty. Ellsworth v. Peoples Life Ins. Co., 247 Ill. App. 161. It appears to us from the plaintiff's evidence alone, that the defendants were justified in having a strong and an honest suspicion that he either was committing larceny himself or was aiding others in doing so.

There is no evidence that the defendants did not act in good faith; there is no evidence from which malice can reasonably be imputed to them. The evidence of the plaintiff is legally insufficient to sustain an essential part of his complaint, and the trial judge was correct in entering judgment for the defendants on this phase of the case.

The claim for false imprisonment is predicated upon the arrest, the detention by the defendants, and the confinement in Chicago police stations. One dispute pertaining to this claim should be settled first. It concerns the status of the railroad's employees.

Throughout his brief the plaintiff views the four employees as private citizens. The defendants regard them as police officers and their brief is drawn on this premise. Doyle and Eglar had no warrant and no criminal offense was committed in their immediate presence. If they were private citizens the arrest of Hughes was clearly illegal. If they were officers, the arrest was legal if a crime had been committed and if they had reasonable ground for believing Hughes had committed it. Ill. Rev. Stat. 1957, chap. 38, par. 657.

Evidence, which was not disputed, showed that Doyle and Eglar, and Manning and Howard too, had been appointed special policemen by the Commissioner of Police of Chicago. Such appointments are provided for in the Chicago Municipal Code, chap. 173. The

231

authority of those appointed is found in sec. 11: ".... Special policemen shall possess all the powers of the regular police patrol at the places for which they are respectively appointed or in the line of duty for which they are engaged. . . ." The agents were on the premises of the railroad and were working in their line of duty protecting property being transported. We find that they were officers within the meaning of the statute.

Whether they had reasonable grounds as officers for making the arrest depends upon the information they had, the things they saw, and the circumstances surrounding the arrest. Much of this, of course, is evidence which cannot be evaluated on the motion we are now considering. It is, however, a proper question for the jury under appropriate instructions of the court defining the powers of special policemen and the authority of officers in making arrests.

■ ■ False imprisonment does not necessarily depend on the legality of the arrest. The unlawful restraint by one person of the liberty or freedom of movement of another constitutes false imprisonment. Schramko v. Boston Store of Chicago, 243 Ill. App. 251. An unlawful detention following an arrest can itself be false imprisonment. Fulford v. O'Connor, 3 Ill.2d 490. The plaintiff was held from 1:00 a. m. until he was relinquished to the city police which, according to plaintiff's exhibit 1, the police arrest slip, was done at 9:35 a. m. No justification for this delay was shown. The fact that Manning did not arrive at his office until 3:00 a. m. does not excuse it; neither does the time spent in questioning Dorsch and Casper, nor the fact that Hughes was supposed to work until 6:30 a. m.

■ Our law provides that a person arrested without a warrant shall, without unnecessary delay, be taken before the nearest magistrate. Ill. Rev. Stat. 1957, chap. 38, par. 660. The right to be charged with

an offense and to be admitted to bail is a corollary and equal right. Ill. Rev. Stat. 1957, chap. 38, par. 609. It was the duty of these special policemen to place a formal charge against Hughes as soon as they reasonably could, and to do this it was their duty to take him to a public police station.

■■ ■■ The private police department of a company does not supplant the police department of a municipality; its officers have no right to arrogate to themselves either the authority or the broad functions of a city police department. Sec. 11 of chap. 173 of the Municipal Code gave Manning and Howard powers identical to those of regular police patrolmen. These powers are limited, must be exercised with care, and those who abuse them can be held accountable.

The defendants contend that they are not responsible for what happened to Hughes after he was placed in city police custody because a superior authority took over. But in this case the jury may have found that the influence and the responsibility of defendants extended beyond 9:35 Sunday morning. After all the hours spent with Hughes during the night no charge was placed against him Sunday morning. He was not charged with a crime until 4:10 p. m. the next day. (Plaintiff's exhibit 1.) If defendants had made a specific complaint it is reasonable to presume the police would have entered it. The statement signed by Hughes was prepared by Manning; it was witnessed by defendants, and kept by Manning, who later gave it to the State's Attorney. Howard participated in the search of the plaintiff's home. The jury might have thought that there was some connection between defendants' interest in the search and Hughes' not being taken before a judge Monday morning and not being admitted to bail until Monday afternoon.

■■ The plaintiff presented sufficient evidence to support his allegations of false imprisonment, both as

to his detention by the defendants and while in police custody; these were issues for the jury. The judgment notwithstanding the verdict should not have been granted on this count.

This brings us, under Ill. Rev. Stat. 1957, chap. 110, sec. 68.1 (6), to that part of the order granting a conditional new trial. The post-trial motion raised many points, among them that the court should have granted defendants' motions for directed verdicts as to each count of the complaint. Although the court stated no reasons for the order, several of the points had merit and the court did not abuse its discretion in granting a new trial. It is not necessary to discuss these various contentions because, under the conclusions we have reached, there must be a new trial. The verdicts upon which judgment was entered did not separate malicious prosecution and false imprisonment. Since we sustain the judgment for the defendants on one and not on the other, the verdicts must be set aside.

The judgment for the defendants on the malicious prosecution count is affirmed. The judgment for the defendants on the false imprisonment count is reversed. The order granting a new trial is affirmed. The cause is remanded to be re-tried on the issue of false imprisonment and for such other and further proceedings as are not inconsistent with the views herein expressed.

Affirmed in part, reversed in part and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.