Simon Freides, Plaintiff-Appellee, v. Sani-Mode Manufacturing Co., an Illinois Corporation, and Manny Stern, Defendants-Appellants.

Gen. No. 48,960.

First District, Fourth Division.

December 2, 1964.

Sherwin & Sherwin, of Chicago (Julius L. Sherwin and Theodore R. Sherwin, of counsel), for appellants.

William C. Wines, Graham & McElligott and Maxfield Weisbrod, of Chicago (William C. Wines and Errett O. Graham, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

This appeal is taken from a judgment awarding $25,000 in damages for malicious prosecution, against the individual defendant, Manny Stern, and the corporate defendant of which he was president and principal shareholder, Sani-Mode Manufacturing Company.[1] Plaintiff alleged that Stern and Sani-Mode (by Stern) appeared before a grand jury on June 24, 1948 and falsely, maliciously and without probable cause charged plaintiff with "unlawfully, feloniously and fraudulently taking and converting

---

[1] Charges of false arrest and imprisonment were also made in the complaint. We shall consider them to have been abandoned in the trial court, however, as no instructions regarding them were given to the jury and apparently none was offered. Plaintiff did not file a cross appeal.

to his own use," with the intent to steal, plastic film worth $5,000. It was alleged that defendants "caused" the return of an indictment on that date. This indictment was nolle prossed because defective in attributing the ownership of the property to Stern instead of Sani-Mode. Stern again testified before the grand jury, in response to subpoena, and a second indictment was returned November 17 similar to the first except that it substituted the name of Sani-Mode Manufacturing Company. Plaintiff was found not guilty in a trial before a jury on February 25, 1949. He then instituted his suit for malicious prosecution, which was twice dismissed for want of prosecution. The present judgment was obtained in a 1962 trial, almost fourteen years after the acts complained of.

The evidence discloses that from August, 1947 plaintiff was a subcontractor for Sani-Mode, which processed and sold plastic products such as tablecloths and curtains. Rolls of material sent by defendant were cut and sewn by plaintiff to certain specifications at an agreed price per dozen items. Stern testified that he did not compute the yardage to be used from the rolls for particular orders. Instead, more was sent than needed, and from time to time plaintiff was given additional orders to be filled from the excess yardage which, though Sani-Mode's property, remained in plaintiff's possession. Likewise, plaintiff's office manager stated that she made no record of the amount of material left on the rolls at the completion of a particular order, but plaintiff would just keep cutting until the rolls were used. She testified that sometimes she ran short of Sani-Mode plain border material and used the same kind of plain plastic which was bought by plaintiff from another source. She would let

229

this credit accumulate until it reached a full roll before balancing the account by appropriating a roll sent by Sani-Mode, but she did not inform defendant of this practice.

On June 15, 1948, plaintiff himself subcontracted some work by sending four rolls of plain material, claimed to be his own, to American Cutting and Binding Company to be cut into curtain borders. Plaintiff's office manager testified the rolls were shipped in old cartons which bore Sani-Mode labels, and when a question arose about the order, American Cutting called Sani-Mode by mistake.

In response to this call, first Levy, an employee of Stern, then Stern, and eventually his lawyer, proceeded to plaintiff's factory on June 16, where Stern said he recognized 70 rolls of Sani-Mode's exclusive patterns comprising 5,000 yards of plastic material. Fifty-five rolls were in original packages and fifteen had been opened.

Stern testified that he protested to plaintiff, "How come it has been several months since we have discontinued these patterns and you still got them here, and you told me you don't have any more of our goods?" To which plaintiff replied, "I bought these from St. Lawrence Textile." Stern then asked, "You bought the same patterns we have?" and plaintiff answered, "Yes." Stern then asked to see the bills which would show that plaintiff had bought the goods, but plaintiff did not produce any. Instead, according to Stern, plaintiff, after a little while, said "Stern, I am doing you wrong. . . . I did you wrong, I am willing to make good, let's see how much goods belong to you, and we will pull it out and I will agree to let you have it."

Plaintiff and his office manager testified they had been planning to go into business for themselves and had accumulated material from several com-

230

panies, one of which was the aforementioned St. Lawrence Textile company, which had supplied Sani-Mode with exclusive patterns. Plaintiff introduced a bill for several thousand dollars from St. Lawrence dated the previous January in support of his explanation, but the bill does not indicate what patterns were involved, nor was there any evidence that it had been exhibited to Stern prior to commencement of the criminal proceedings. Plaintiff claimed that, although he had asked St. Lawrence for Sani-Mode's exclusive patterns, he had been unable to obtain them.

Plaintiff did not testify to the quantity of Sani-Mode material on the premises at the time of the confrontation, but merely said: "I didn't have too much on hand. I had a lot of goods cut up and had to be finished."

Plaintiff testified: "Stern said he will arrest me and put me in jail, you can fight me if you want, but you haven't enough money to fight me." Also, according to plaintiff, defendant's lawyer said to plaintiff: "Mr. Freides, I've got to tell you something, you know I am a good friend of yours, take my advice, give up whatever you have, machines, the equipment, everything, sign it over, and we will do you no harm." The lawyer denied giving this advice, and Stern denied making any threat to plaintiff.

After plaintiff had called his lawyer and much discussion had ensued, Stern and his men were ordered off the premises and they departed without the goods.

The next day defendants started a replevin suit in the Municipal Court of Chicago, and, after filing bond, Stern returned to plaintiff's place of business with a bailiff and a writ of replevin for various materials which he testified he had seen there the

day before. They found but a part of the property listed therein. An order entered after trial of the replevin action two years later found the right of property in Sani-Mode to 2,571 yards of plastic material, 302 tablecloths, 1,142 curtains and 159 garment bags. These items evidently were the ones that had been recovered by the bailiff. The suit for the rest of the property was dismissed on January 18, 1951, upon stipulation.

A second replevin suit, filed by Sani-Mode against American Cutting and Binding Co., resulted in the recovery of the four rolls of plastic sent there by plaintiff. Plaintiff did not intervene in that suit.

Defendants kept the goods recovered in the two replevin suits but did not sue for the value of the remainder. Plaintiff claimed, and Stern appears to have agreed, that labor charges of $1,500, outstanding at the time of the confrontation, were paid by defendant at the time the first replevin suit was dismissed.

Plaintiff and his office manager claimed that an accounting was made in October of 1949, when the manager and plaintiff's bookkeeper examined the records with Stern's employee, Levy, and found that more material had been returned by the plaintiff than he had received. Stern denied this, asserting that Levy at that time was no longer in his employ and thus could not then have acted as his agent.

Returning to June of 1948, soon after defendant's goods were seized by the bailiff under the replevin writ at plaintiff's factory, Stern and his attorney conferred with an Assistant State's Attorney at the latter's office. He, in turn, contacted plaintiff by phone and then prepared a complaint form which was approved by Richard B. Austin, First Assistant State's Attorney, for presentation of the case to the grand jury.

■ An essential element in a suit for malicious prosecution, oftentimes called the gist of the action, is defendant's lack of probable cause in initiating proceedings against the plaintiff. Denslow v. Hutchinson, 152 Ill App 502, 504 (1910); Jacks v. Stimpson, 13 Ill 702, 704 (1852); Israel v. Brooks, 23 Ill 575, 577 (1860). Probable cause is defined as "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty." Harpham v. Whitney, 77 Ill 32, 42 (1875). See also Hughes v. New York Cent. System, 20 Ill App2d 224, 231, 155 NE2d 809 (1959).

■ ■ In the instant case prima facie probable cause is established by the grand jury's return of indictments against the plaintiff. Doss v. Hutson, 321 Ill App 157, 52 NE2d 279 (1943); 54 CJS Malicious Prosecution § 35. (For decisions in other jurisdictions reaching this result, see Eberhardt v. Consolidated Edison Co. of New York, 151 NYS2d 823, 824, affd 169 NYS2d 37 (1957); Berger v. American Nat. Fire Ins. Co., 109 NYS2d 696 (1952); Brown v. Cluley, 179 A2d 93 (Del Super 1962); and Dawes v. Starrett, 336 Mo 897 (1935).) And the fact that plaintiff was found not guilty by the trial jury does not negative this prima facie defense. The presumption raised by the grand jury action in favor of the proposition that defendants acted with probable cause may be rebutted only by proof that the indictments were obtained by false testimony on the part of defendant or by his failure to make a full statement of facts to the grand jury. Eberhardt v. Consolidated Edison Co. of New York, supra; Dawes v. Starrett, supra.

■ Proof of false testimony before the grand jury would necessarily involve proof of the content

233

of the testimony given before the grand jury. There would appear to be no problem as to the admissibility of such evidence,[2] but no attempt was made to introduce it directly or indirectly. Even when defendant was called as an adverse witness, he was not asked to relate his testimony before the grand jury, though he was questioned generally in regard to the matters in issue. We cannot accept plaintiff's bootstrap argument that the jury's verdict in this case established the fact that Stern must have testified falsely before the grand jury. And there was no evidence that defendant failed to make a full statement of facts before the grand jury.

Considering, nevertheless, the question of probable cause as shown by the evidence which was introduced, we refer again to defendant's testimony that he saw 70 rolls of plastic film printed with his exclusive pattern in plaintiff's shop. This appears never to have been clearly denied. Defendant also asserted that he found some of his exclusive patterns sewn into aprons and garment bags which had not been ordered by him. He also testified to the assurance by plaintiff that plaintiff had none of defendant's goods in his shop. These charges were not rebutted. Furthermore, no evidence overcame the effect of the replevin order, establishing defendant's right to possession of the goods taken from plaintiff's factory by the bailiff at defendant's direction. See Ogrodnik v. Capron, 332 Ill App 138, 74 NE2d 63 (1947). While this decision came later, it necessarily related back to support defendant's earlier contention that plaintiff was wrongfully in possession of defendant's goods.

---

[2] Kirsch v. Walter, 151 Ill App 378, 383; People v. Goldberg, 302 Ill 559, 564, 135 NE 84; Hower v. Clerkin, 50 NE2d 902 (Ohio App 1931) ; 23 CJS Criminal Law § 846.

Under these circumstances, it was reasonable for defendant to believe that plaintiff was wrongfully detaining and converting material and thus was guilty of larceny by bailee, as charged in the indictments.

The fact that plaintiff was subsequently acquitted at the criminal trial in no way diminishes the reasonableness of defendant's belief in his guilt at the time of the grand jury hearings. Berner v. Prairie State Bank, 281 Ill App 31 (1935); Ellsworth v. Peoples Life Ins. Co., 247 Ill App 161 (1928).

The only counter proof offered by plaintiff was his own selfserving statement that "I didn't have too much of Mr. Stern's plastic on hand" at the time of the confrontation. Would it have been unreasonable for Stern to conclude that any was "too much" under all the circumstances? we think not. Plaintiff also testified that he figured from his records that Stern "received more than what he gave me." But it should be noted that this testimony related to a point in time about fifteen months after the decision to prosecute, and could not bear upon the question of probable cause for prosecution.

■ Granted that it is ordinarily difficult to prove a negative, nevertheless, from the early cases to the present time there has been an unbroken line of decisions holding that a plaintiff in a malicious prosecution action has the burden of proving the absence of probable cause. Israel v. Brooks, 23 Ill 575, 577 (1860); Palmer v. Richardson, 70 Ill 544, 546 (1873); Carlyle v. Carlyle, 28 Ill App2d 90, 17 NE2d 790 (1960).

■ Malice is also one of the elements which plaintiff must prove. Calef v. Thomas, 81 Ill 478, 482 (1876); Hughes v. New York Cent. System, 20 Ill App2d 224, 228, 155 NE2d 809. It was held by this court in Hughes that malice is not a legal pre-

235

sumption which can be inferred from the mere lack of probable cause. There are other decisions which tend to disagree with this position: e. g., Carbaugh v. Peat, 40 Ill App2d 37, 47, 189 NE2d 14, but so far as concerns the instant case this point need not now be decided. For we hold that considering only plaintiff's evidence in the light most favorable to him, there was no evidence from which either malice or want of probable cause could reasonably be attributed to defendants.

In addition to the failure of plaintiff's evidence on these two points it was also undisputed that defendant presented the matter to the State's Attorney on the advice of his lawyer. Public policy favors protecting such action if it be shown that the client had presented all the facts to his attorney in obtaining his advice. We say that the evidence is undisputed on this point because of the circumstance that defendant's attorney was present with his client at the confrontation in plaintiff's factory, and they acquired knowledge of the essential "incriminating" facts jointly through a tour of the premises during which they verified the presence there of material which had originated with defendant. It was also on the basis of this information that defendant's attorney prepared the statement of claim in replevin (ultimately successful) and accompanied Stern to the State's Attorney's office. Mioduszewski v. Spoganitz, 209 Ill App 112.

While plaintiff implies that the action of the State's Attorney's office was politically motivated, because of a political relationship between the Assistant State's Attorney and an Alderman who was friendly to Stern, we consider this point to be of no consequence. It does not purport to apply to the decision of the First Assistant State's Attorney. As to the Assistant who took Stern's com-

236

plaint, he testified that the determination to present the matter to the grand jury was his own decision, prompted only by the facts of the case as related by Stern. Stern and Levy were under subpoena when they testified before the grand jury which returned the indictments against plaintiff.

In view of the conclusion we have reached, trial errors suggested by defendants pertaining to the admission of evidence of the pecuniary worth of one defendant, the exclusion of testimony by defendant Stern (on the question of malice) to the effect that he bore the plaintiff no ill will, and the issue of excessiveness of damages awarded, need not be determined.

The judgment of the trial court is reversed with judgment here in favor of defendants.

Reversed.

DRUCKER and McCORMICK, JJ., concur.