(No. 88-CC-1444-)

EMILY HOWARD, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed October 10, 1989.*

*Opinion filed March 15, 1993.*

*Order filed May 4, 1993.*

JOHN F. O'MEARA, for Claimant.

ROLAND W. BURRIS, Attorney General (JANICE SCHAFFRICK, Assistant Attorney General, of counsel), for Respondent.

## ORDER

FREDERICK, J.

This cause coming to be heard on the motion of Respondent for summary judgment, due notice having been given the parties hereto and the Court being duly advised in the premises, the Court finds:

On June 15, 1987, Officer Kuramitsu of the Illinois State Police was patrolling the northbound lanes of the Edens Expressway (Interstate Highway 94 West). At approximately 7:10 a.m., he observed a disabled vehicle on the shoulder just south of Dempster Street in the Village of Skokie and stopped to offer assistance. The Claimant, who had been driving, informed him that the automobile had overheated.

As a matter of routine police procedure, Officer Kuramitsu ran a check on the vehicle's license plates and on the operator's driver's license. A check operates in the following manner. The patrolman radios key information to an operator in the station house who enters the information into a computer containing information on fugitives and stolen vehicles. If the personal "identifiers" of the detainee substantially match those of a fugitive, the fugitive's identifiers appear on the operator's screen. The operator then sends a "hit tone" via police radio to the officer. The officer then contacts the operator to get specific

information on the fugitive. After comparing the fugitive's identifiers with the detainee's, the officer makes the decision whether or not to arrest the detainee.

Officer Kuramitsu received a hit tone on the driver's license check on Emily Howard. After contacting the operator, he was informed of the following:

1. That there was an outstanding warrant from the superior court in Washington, D.C., for a Denise Howard who was wanted for escaping from prison;

2. That the detainee's car was not registered in her name, but in the name of Blakely Coats;

3. That the detainee had exactly the same hair and eye color as Denise Howard;

4. That detainee's height and weight were almost identical to those of Denise Howard. The difference was only one inch and one pound. Detainee's driver's license listed her as 5'6", 109 lbs., while the fugitive was 5'5", 110 lbs.;

5. That the fugitive had previously used an alias first name starting with the letter "E," as in Emily;

6. That detainee had the same exact day, month and year of birth as the fugitive: June 6, 1950.

Based upon the above, Officer Kuramitsu determined that the detainee might be Denise Howard and, at 7:30 a.m., arrested her to ascertain if she was indeed Denise Howard.

Arriving at the Skokie Police Station at approximately 7:40 a.m., the suspect was searched for weapons and at 8:30 a.m., fingerprints were taken and sent to Joliet to obtain a fingerprint classification. At 10:55 a.m., Officer Kuramitsu was informed by Joliet that the prints

were unclassifiable. At approximately 11:10 a.m., the suspect was refingerprinted and the prints were sent to the FBI. At approximately 12:30 p.m., Officer Kuramitsu was informed that the FBI machine was not accepting the prints. At this time, Officer Kuramitsu requested the prints be sent to Joliet and simultaneously pursued other means of identifying the suspect, namely by calling her employer and by questioning the suspect, her sister and her mother. After such investigation, Officer Kuramitsu determined that the suspect was not Denise Howard and immediately released her at approximately 12:55 p.m., less than 5½ hours after her arrest.

A motion for summary judgment is properly granted "where the pleadings, exhibits, depositions and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Lopez v. Winchell's Donut House* (1984), 126 Ill. App. 3d 46, 466 N.E.2d 1309.

In the instant matter, both parties agree on the event which occurred. The only disputed issue is the legal consequences of Officer Kuramitsu's actions. Therefore, the question presented to this Court is one of law and is properly decided by this Court in a summary judgment proceeding.

## False Imprisonment

False imprisonment consists of an unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion. (*Dutton v. Roo Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.) False arrest is one means of committing false imprisonment. (*Shemaitis v. Froemke* (1955), 6 Ill. App. 2d 323, 127 N.E.2d 648; *Dutton v. Roo Mac, Inc., supra.*) However, even when the arrest itself is perfectly valid and legally sustainable, an unreasonable detention following the arrest can be, in

and of itself, "false imprisonment." (*Luker v. Nelson* (1972), 341 F. Supp. 111.) Claimant's complaint alleges false imprisonment based on both false arrest and unlawful detention following an arrest. In the present matter, there is no issue of fact and movant is entitled to judgment as a matter of law on both allegations.

## False Arrest

In *Dutton,* the court stated that "an arrest authorized by statute cannot be grounds for civil liability." Since Officer Kuramitsu arrested the Claimant pursuant to Ill. Rev. Stat. 1987, ch. 38, par. 107—2(1)(b), the arrest cannot be grounds for false imprisonment.

Ill. Rev. Stat. 1987, ch. 38, par. 107—2(1) states that,

"A peace officer may arrest a person when ° ° ° (b) He has reasonable grounds to believe that a warrant for the person's arrest has been issued in this state or in another jurisdiction."

Via police radio, Officer Kuramitsu was informed that there was an outstanding warrant for Denise Howard and reasonably believed that the Claimant could have been the fugitive based on the following information:

1) The car Claimant was driving was not registered in her name. Rather it was registered to one Blakely Coats;

2) Both Denise Howard and Claimant had black hair and brown eyes.

3) Denise Howard was five feet, five inches high, while Claimant's driver's license listed her as five feet, six inches high;

4) Denise Howard weighed 110 lbs., while Claimant's driver's license listed her as 109 lbs.;

5) Denise Howard had previously used an alias first name beginning with the letter "E," as in Emily;

6) Most importantly, both Denise Howard and Claimant have exactly the same birthdate: June 6, 1950.

Clearly, the above-stated similarities gave Officer Kuramitsu the statutorily required "reasonable cause" to arrest Claimant.

In addition to the above-mentioned statutory justification for the arrest, Claimant's cause of action must fail by the very definition of false arrest as determined by case law.

In *U.S. ex rel Kirby v. Sturges* (1975), 510 F. 2d 397, police officers on the lookout for a con man mistakenly arrested the plaintiff based on a department bulletin bearing a description and picture of the wanted person. The circuit court ruled that there was no false arrest because the officers' mistake was reasonable. The court, resting its decision on a Supreme Court case, *Hill v. California* (1971), 401 U.S. 797, 91 S. Ct. 1106, stated that "The Supreme Court has held an arrest or stop based upon a reasonable mistake as to identity is lawful." *Kirby*, at 401.

Since Officer Kuramitsu made a reasonable mistake as to Claimant's identity, *Kirby* and *Hill* dictate that the arrest was lawful, thereby defeating a false arrest claim as a matter of law.

We find that Respondent is entitled to judgment as a matter of law on the false arrest claim because:

1. Officer Kuramitsu arrested Claimant pursuant to statute and therefore the arrest cannot give rise to civil liability. *Dutton v. Roo Mac, Inc., supra,* and;

2. The arrest resulted from a reasonable mistake of identity which *Kirby* and *Hill* have deemed lawful, thereby defeating a false arrest claim as a matter of law.

## Unlawful Detention

In addition to false arrest, unlawful detention following an arrest can itself give rise to a false imprisonment claim. (*Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 155 N.E.2d 809.) In paragraph 7 of her complaint, Claimant asserts that she "was detained despite information available to respondent that she was not the person named in the warrant." This attempt at analyzing Officer Kuramitsu's actions with the benefit of hindsight is incorrect. Rather, the lawfulness of his actions must be viewed in light of police procedure and the facts available to the officer at the time of the alleged incident.

Officer Kuramitsu used a statutorily approved method of identifying the Claimant. Officer Kuramitsu attempted to identify Claimant by her fingerprints pursuant to Ill. Rev. Stat. 1987, ch. 38, par. 206—4, entitled "Systems of Identification," which states that

"The Department may use the following systems of identification: The Bertillion System, *the fingerprint system*, and any system of measurement or identification that may be adopted by law ° ° °." (Emphasis added.)

For an unknown reason, the prints were returned "unclassifiable," so the prints were retaken. Clearly, to repeat an approved procedure one time cannot make Respondent liable for false imprisonment. If it did, police officers would be forced to release potential fugitives and felons every time a first set of prints was deemed "unclassifiable." After the second set of prints was returned "unclassifiable," Officer Kuramitsu immediately pursued secondary, less exact methods of identification which led to Claimant's release less than six hours after her arrest.

Claimant complains that Respondent's above-stated actions caused her to be detained for the unreasonable length of six hours. However, courts have recognized that

proper police procedure can be time consuming, yet not constitute unreasonable detention.

In *Doe v. Thomas* (1985), 604 F. Supp. 1508, as in our case, plaintiff was arrested pursuant to a valid warrant. *Doe* was imprisoned at two police stations for "a total of approximately nine hours for the proper purpose of administrative processing." (*Doe*, at 1515.) The court granted defendant's motion for summary judgment, denying the claims of false arrest and false imprisonment. Although *Doe* was detained for "booking," detention to identify Claimant is likewise a "proper purpose of administrative processing."

In the instant matter, administrative processing took three hours less than in *Doe*. If nine hours for processing was reasonable as a matter of law in *Doe*, certainly Claimant's six hours of detention awaiting identification results cannot support a false imprisonment claim. Based on *Doe*, we find that there was no unlawful detention as a matter of law and grant Respondent's motion for summary judgment.

In light of the above-cited case law, we further find that the undisputed actions of Officer Kuramitsu clearly do not constitute false imprisonment as a matter of law.

It is therefore ordered, adjudged and decreed that the Respondent's motion to dismiss is granted, and this claim is dismissed.

## OPINION

FREDERICK, J.

Claimant, Emily Howard, filed her case in the Court of Claims on November 19, 1987. She alleged that she was falsely arrested and detained by an Illinois State Trooper on June 15, 1987. The cause was tried before

Commissioner Weinberg. The Claimant filed her brief but the State failed to file a brief.

## The Facts

At about 6:50 a.m. on June 15, 1987, the Claimant, Emily Howard, was driving to her employment at Avon Products on Golf Road in Morton Grove, Illinois, as a temporary worker for Just Jobs. She performed work at Avon Products as an assembly line worker.

Emily Howard was born in Chicago, Illinois, on June 6, 1950. Claimant testified she had never been arrested or convicted of any crime except for traffic violations. She testified she had never been outside of the Chicago area except to go to Cincinnati to visit her father. On the date in question, Claimant was dressed in a blouse and jeans and she was carrying her purse. She was driving a car registered to Blakely Coats who was a friend of Claimant's sister, Deborah Johnson. Deborah Johnson worked at Avon, too, and she was going to work with Claimant that morning. Their hours of work were from 7:00 a.m. to 3:30 p.m. They left their home at about 6:00 a.m. and proceeded north on Edens Expressway. At some point the car began running hot and at about 6:50 a.m., Claimant pulled to the side of the expressway to put water in the radiator and to allow the engine to cool. The car was pulled over just south of Niles Center Road.

At about 7:00 a.m., Trooper Bryant Kuramitsu of the Illinois State Police observed the car driven by Emily Howard. Trooper Kuramitsu pulled his State Police car behind the Howard car on the shoulder. He had been a trooper for about a year. After first ascertaining what the car problem was, Trooper Kuramitsu initially went to the trunk of his State Police car to get water for the radiator.

Trooper Kuramitsu then asked for Emily Howard's driver's license. Upon receipt of the license, Trooper Kuramitsu ran a status check on the driver's license and auto license of Claimant.

Trooper Kuramitsu spoke on the police radio to Clarence B. McCormick, a telecommunicator employed by the State Police and stationed at District III headquarters at Irving Park Road and Harlem Avenue. Telecommunicator McCormick operated both the radio and a computer terminal at district headquarters. As a matter of procedure, McCormick entered the driver's name, sex, date of birth and license number into the computer, and the computer accessed banks of stored data. It accessed TIPS (Traffic Information Planning System) maintained by the State Police in Springfield, Illinois, which showed whether the person had received a citation or warning from either the State Police or Department of Conservation in the past year, and it also accessed LEADS (Law Enforcement Agency Data System) which was maintained by the State of Illinois in Springfield, Illinois, and contained information regarding stolen vehicles and wanted persons in the State of Illinois. The computer also accessed NCIC (National Crime Information Center) information compiled from the 50 States plus foreign countries regarding the same subjects through NLETS (National Law Enforcement Terminal System). The records of the Illinois Secretary of State were also accessed regarding the driver's license and automobile registration information requested by Mr. McCormick.

When telecommunicator McCormick entered the information from Trooper Kuramitsu as to Claimant, the computer showed that the automobile had valid Illinois license plates, that Emily Howard had a valid driver's license which was last issued on June 4, 1986, and that

there were no positive responses from TIPS or LEADS. However, from the NCIC there was a response that a Denise Howard was wanted for prison breach in Washington, D.C., with the contact being Charles V. Hargrave, Jr., D.C. Department of Corrections. The warrant had been issued from the D.C. Superior Court on December 3, 1986. The computer information showed the wanted person, Denise Howard, had been born in New Jersey and was born on either June 6, 1950, or June 6, 1958. Two dates of birth were shown. The additional information provided on Denise Howard was that she was a black female with brown eyes and black hair. She was 5 feet, 5 inches tall and weighed 110 pounds. She had used several aliases, including Evon Hicks. The computer sheet ended with these words: "IMMED Co. FIRM WARRANT and extradition with ORI."

Claimant, Emily Howard was born on June 6, 1950. She is a black female. She is 5 feet, 6 inches tall, weighed 109 pounds, and had black hair and brown eyes. To Officer Kuramitsu, the computer information constituted a reasonably close match of identifiers between Emily Howard and the wanted Denise Howard.

The Illinois State Police have a policy and procedure that was in existence on June 15, 1987, for circumstances such as those in the present case. Respondent presented the policy and procedure into evidence as Exhibit 4. The relevant portion of those policies and procedures is as follows:

"HIT PROCEDURE (OPS-11)

PURPOSE

The purpose of this directive is to establish uniform procedures governing the exchange of Computerized Hot File (CHF) data by radio between communications personnel and officers utilizing the Department of State Police Communications System. The objectives of this procedure are to enhance officer safety and to protect law enforcement agencies and their employees

from civil liability as related to the action taken based upon computerized hot file information.

*DEFINITIONS*

1. *Hit:* A positive response message to an inquiry producing a record from the Computerized Hot Files of LEADS and/or NCIC which is identical to some or all of the identifiers submitted in the inquiry.

 a. A hit is investigative information only. The hit provides information for decision making by police officers, investigators, judges, etc. The information furnished by the hit must be evaluated along with other facts known to the officer. A hit is one fact which may be added to other facts obtained by the officer in establishing sufficient legal grounds for arrest. A hit is an informational tool.

 b. *A LEADS and/or NCIC hit alone may be used by the officer as reasonable grounds for detention of persons and/or property at the scene. However, only after documented confirmation with the originating authority is probable cause provided to effect an actual arrest or recovery.* (Emphasis added.)

2. *Valid Hit: To the LEADS operator*—A hit that contains identifiers that are an exact match or a reasonably close match to the identifiers given in the inquiry. A valid hit will be disseminated to the inquiring source.

*To the officer*—A hit that contains identifiers that are an exact match or a reasonably close match to the visible and/or numeric identifiers of the person or property inquired upon. A valid hit establishes that there is reasonable grounds to initiate recovery or detention."

Based on the computer information of a reasonably-close match, telecommunicator McCormick broadcast a hit tone to Trooper Kuramitsu. Lieutenant Richard Lambert of the Illinois State Police testified, "reasonably close" meant that the characteristics are sufficiently similar to warrant a little more checking.

Both telecommunicator McCormick and Trooper Kuramitsu testified to inaccuracies they had experienced concerning the computer information generated by the aforesaid systems. McCormick testified that he received an average of 15 to 20 positive responses per week from the computer data banks and that he had eight on the day prior to his testimony. Mr. McCormick could not testify to a percentage as to how many of the hit reports were accurate, but of the eight the previous day, not one had been

accurate. Trooper Kuramitsu also testified that a substantial number of hit tones had turned out to be invalid. Other than the computer-generated information, there was no testimony presented that there was anything suspicious or criminal concerning the conduct or appearance of Claimant, Emily Howard. Claimant's driver's license was valid and there were no warrants under the name, Emily Howard. The last name, Howard, is a common last name.

Claimant testified that after the trooper had been on the radio, the trooper exited the police car and came over to where Claimant was and told her that he had to take her in. Trooper Kuramitsu testified that he asked Emily if she was born in New Jersey or had ever been to Washington, D.C. Claimant testified she showed the trooper her check-cashing card, her State of Illinois identification card, a Mutual of Omaha medical insurance card, and a driver safety citation from the Illinois Secretary of State issued on June 4, 1986.

Deborah Johnson testified that she told the trooper that they were on their way to work.

Telecommunicator McCormick testified that Trooper Kuramitsu never asked him to confirm the "hit" with the originating authority. McCormick testified that he would only confirm with the originating authority if requested to do so by the trooper in the field and that he would not confirm if the officer did not ask him to do so. When McCormick "confirmed a hit," he would send a confirmation request by computer to the originating authority. If some clarification was needed, there was a telephone in the "operations" or "headquarters" section next to where McCormick worked for such purposes. Lieutenant Lambert corroborated that only the telecommunicator initiates the confirmation process.

Trooper Kuramitsu testified that he took Emily Howard into custody because he had no further information to go on, and he felt it was his duty to investigate further in that Emily Howard could be the wanted person.

Lieutenant Richard Lambert was called as a witness by the State. He testified that the policies and procedures in Claimant's Exhibit 4 only applied to telecommunicators and not field officers. However, he identified Respondent's Exhibit 1 as the relevant Illinois State Police operational policy regarding computerized hot files which would apply to field officers. That exhibit states in part:

"g. *CONFIRM* the validity of the computerized hot file (CHF) record by contacting the originating agency via directed message.

*NOTE* If there is no response from the originating authority within a reasonable length of time (10 minutes), refer the matter to the desk operations officer."

Trooper Kuramitsu did take Claimant, Emily Howard, into custody and transported her to the Skokie, Illinois, police station. He did not seek confirmation of the warrant and did not refer the matter to the desk operations officer. While in custody at the Skokie police station, neither Claimant or her purse was searched. However, Claimant was handcuffed to a bench. Trooper Kuramitsu testified that at the police station he called Avon to check on Claimant's employment and was referred to a temporary agency. The Trooper called Just Jobs and Claimant's employment was confirmed. Trooper Kuramitsu never tried to contact Mr. Hargrave in Washington, D.C., to confirm the warrant and obtain better identifiers even though he was given the phone number of Mr. Hargrave. Trooper Kuramitsu testified that Claimant was taken to the Skokie police station for the purpose of identifying her by fingerprints. Emily Howard testified that she was printed three or four times. Trooper Kuramitsu testified that the first set of prints was returned as

unclassifiable and that Claimant was reprinted at 10:55 a.m. The second set of prints was sent to the FBI, but at 12:30 p.m., he was advised that the FBI facsimile machine was not working. The prints were then sent to Joliet, with the negative match results being returned at 2:00 p.m. Claimant was released at 12:55 p.m. before the fingerprints were reported as a negative match.

Trooper Kuramitsu testified that he decided to release Claimant because of her attitude and her family's attitude which convinced him she was not the wanted person. Additionally, shortly before Emily's release, a friend of Claimant's mother, Steve Kula, arrived at the Skokie police station to give additional information and advise the police that the wrong person must have been arrested.

As to damages, Claimant testified that during the week before the incident she had strained her right shoulder while lifting a chair. She claimed that when she was handcuffed, her right shoulder hurt her. The handcuffs also hurt her wrists and she told Trooper Kuramitsu about this in the police car. Trooper Kuramitsu did loosen the cuffs at the station. Except for being fingerprinted, she had to remain handcuffed to a bench. The whole process caused her to feel fear, according to Claimant.

Claimant's employment at Avon was as a temporary from Just Jobs. Avon was planning on hiring some of the agency workers on a permanent basis and Claimant feared that Avon would not hire her because of this arrest. However, Avon did hire her on a permanent basis. Claimant lost approximately $100 for missing work on June 15, 1987. As a result of the arrest, Claimant claims some of her co-workers at Avon called her jailbird and criminal.

## The Law

### Ill. Rev. Stat., ch. 38, par. 107—14 states:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense as defined in Section 105—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

### Ill. Rev. Stat, ch. 38, par. 107—2 states, in pertinent part:

"A peace officer may arrest a person when:

(a) He has a warrant commanding that such person be arrested; or

(b) He has reasonable grounds to believe that a warrant for the person's arrest has been issued in this State or in another jurisdiction; or

(c) He has reasonable grounds to believe that the person is committing or has committed an offense.

(3) A peace officer who executes a warrant of arrest in good faith beyond the geographical limitation of the warrant shall not be liable for false arrest."

The facts in this case are undisputed that Trooper Kuramitsu originally stopped to help Claimant in his caretaking-of-the-public function as a police officer. He had the right in that capacity to obtain identification from Claimant and check for a valid driver's license as she had been driving and was about to drive on a public highway. In that regard, it was permissible to check on wants and warrants for the motorist for the protection of the officer. It is also undisputed that upon receipt of the hit tone from the telecommunicator, at about 7:00 a.m., the trooper detained Claimant at the scene, then arrested Claimant and transported her to the Skokie police station where she was held in handcuffs until about 12:30 p.m., when she was released. It is uncontradicted that Claimant, Emily Howard, was not the wanted person, Denise Howard.

Neither Trooper Kuramitsu nor telecommunicator McCormick followed their own policies and procedures and contacted the originating agency for confirmation on the warrant and additional identifiers. The computer-generated information obtained by the telecommunicator also requested the arresting agency to immediately confirm the warrant and extradition with the originator.

The only disputed issue is the legal consequences of Trooper Kuramitsu's actions. False imprisonment consists of an unlawful restraint, against the will of an individual's personal liberty or freedom of locomotion. (*Dutton v. Roo Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.) False arrest is one means of committing false imprisonment. (*Shemaitis v. Froemke* (1955), 6 Ill. App. 2d 323, 127 N.E.2d 648; *Dutton v. Roo Mac, Inc., supra.*) However, even when the arrest itself is perfectly valid and legally sustainable, an unreasonable detention following the arrest can be, in and of itself, "false imprisonment." (*Luke v. Nelson* (1972), 341 F. Supp. 111.) Claimant's complaint alleges false imprisonment based on both false arrest and unlawful detention following an arrest.

Claimant has the burden of proving by a preponderance of the evidence that the officer imprisoned her, that the officer did not have probable cause to detain her at the scene, or that he did not have probable cause to arrest her and take her to the Skokie police station, and that she suffered damages therefrom. (*Ivancic v. State* (1961), 24 Ill. Ct. Cl. 81.) In *Dutton, supra,* the court stated that "an arrest authorized by statute cannot be grounds for civil liability." Since Trooper Kuramitsu arrested the Claimant pursuant to Ill. Rev. Stat. 1987, ch. 38, par. 107—2(b), the arrest cannot be grounds for false imprisonment.

Pursuant to the transmission by the telecommunicator by police radio, Trooper Kuramitsu was informed that there was an outstanding warrant from Washington, D.C., for a Denise Howard and he reasonably believed, based on the information before him, that the Claimant could have been the fugitive based on the following information:

(1) The car Claimant was driving was not registered in her name;

(2) Both Denise Howard and Claimant had black hair and brown eyes;

(3) Denise Howard was five feet, five inches tall, while Claimant's driver's license listed her as five feet, six inches tall;

(4) Denise Howard weighed 110 lbs., while Claimant's driver's license listed her as 109 lbs.;

(5) Denise Howard had previously used an alias first name beginning with the letter "E," albeit Evon and not Emily;

(6) Denise Howard and Claimant have the same birthdate—June 6, 1950, although a second birthdate of June 6, 1958, appeared on the teletype.

Clearly, the above-stated similarities gave Trooper Kuramitsu the statutorily required "reasonable cause" to stop and detain Claimant at the scene.

In addition to the above-mentioned statutory justification for the stop, Claimant's cause of action must fail by the very definition of false arrest as determined by case law.

In *United States. ex rel. Kirby v. Sturges* (1975), 510 F. 2d 397, police officers on the lookout for a con man mistakenly arrested the plaintiff based on a department bulletin bearing a description and picture of the wanted

person. The circuit court ruled that there was no false arrest because the officers' mistake was reasonable. The court, resting its decision on a Supreme Court case, *Hill v. California* (1971), 401 U.S. 797, 91 S. Ct. 1106, stated that "The Supreme Court has held an arrest or stop based upon a reasonable mistake as to identity is lawful."

Since Trooper Kuramitsu had a reasonable belief that Claimant was the wanted person, *Kirby* and *Hill* dictate that the arrest was lawful, thereby defeating a false arrest claim.

In addition to false arrest, unlawful detention following an arrest can itself give rise to a false imprisonment claim. (*Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 155 N.E.2d 809.) The unlawfulness of Trooper Kuramitsu and telecommunicator McCormick's actions must be viewed in light of police procedure and the facts available to the officer and telecommunicator at the time of the alleged incident. It is a finding of this Court that both the Trooper and the telecommunicator failed to follow their own policies and procedures. The State Police have a written "hit procedure." The objectives of the hit procedure are to enhance officer safety and *to protect law enforcement agencies and their employees from civil liability* as related to the action taken based upon computerized hot file information. (Emphasis added.) There is a tacit admission that much of the information in the computer system is stale or just plain wrong. There was considerable testimony before the Court concerning invalid information in the system.

This case presents a reasonably close match situation rather than an exact match. The warrant is not from Illinois, but from Washington, D.C. The policy and procedure states that an NCIC hit alone may be used by the

officer as reasonable grounds for detention *at the scene.*
(Emphasis added.) An actual arrest can only be made
after documented confirmation with the originating
agency to establish probable cause. Trooper Kuramitsu
and telecommunicator McCormick had grounds to initi-
ate detention. They failed to establish probable cause for
an arrest wherein Claimant could be taken from the
scene. Both the district directive and the policy and pro-
cedures manual require confirmation of the warrant to
establish probable cause. It was an unlawful detention to
arrest Claimant, take her from the scene, and hold her at
the Skokie police station for approximately five hours. To
this day, this Court has never been provided proof of the
validity of the warrant. It is difficult to fathom that to this
date the validity of the warrant has never been proven.

If Trooper Kuramitsu had confirmed the warrant
and obtained better identifiers such as a social security
number, information on scars or other more precise indi-
cations of identification, he could have detained the
Claimant at a police station. Once at the police station,
Trooper Kuramitsu used a statutorily approved method of
identifying the Claimant. Trooper Kuramitsu attempted
to identify Claimant by her fingerprints, pursuant to Ill.
Rev. Stat. 1987, ch. 38, par. 206—4, entitled "Systems of
Identification" which states that

"The Department may use the following systems of identification: The
Bertillion System, the fingerprint system, and any system of measurement or
identification that may be adopted by law ° ° °."

Trooper Kuramitsu also pursued secondary, less exact
methods of identification which led to Claimant's release
about 5½ hours after her arrest.

Claimant complains that Respondent's above-stated
actions caused her to be detained for an unreasonable
length of time. However, courts have recognized that

proper police procedure can be time-consuming, yet not constitute unreasonable detention.

In *Doe v. Thomas* (1985), 604 F. Supp. 1508, which is distinguishable from the present case, plaintiff was arrested pursuant to a valid warrant. *Doe* was imprisoned at two police stations for "a total of approximately nine hours for the proper purpose of administrative processing." (*Doe*, at 1515.) The court granted defendant's motion for summary judgment denying the claims of false arrest and false imprisonment. Although *Doe* was detained for "booking," detention to identify Claimant is likewise a "proper purpose of administrative processing."

By violating their own procedures which admit a hit is not probable cause, Claimant was unlawfully detained. When absolutely no attempt was made to confirm the warrant and obtain better identifiers, it was unlawful for Claimant to be removed from the scene. As previously stated, Claimant also has the burden of proving her damages. Even if Trooper Kuramitsu had not taken Claimant from the scene, he could have lawfully detained Claimant at the scene for a reasonable time to confirm the warrant. If the warrant was confirmed and better identifiers obtained, he could have done exactly what he did do in this case because he would have had probable cause to arrest and detain at a police station while he made reasonable efforts to check on the identification. The 5½-hour total proceeding was not unreasonable if there had been probable cause.

Claimant was not physically injured as a result of her detention. There was no medical evidence of any injury. Claimant was hired permanently at Avon. Claimant did lose $100 in wages. She was upset and embarrassed. She

was handcuffed to a bench in a police station for about five hours.

It is therefore our order that Claimant be awarded the sum of $2,500 as and for her damages in this cause.

## ORDER

FREDERICK, J.

This cause coming on for hearing on Claimant's motion to tax bill of costs, and the Court being fully advised in the premises, wherefore, the Court finds:

1. That Claimant seeks to have two reports of proceedings taxed as costs and ordered paid by Respondent.

2. That Rule 13 of the Court of Claims Regulations (74 Ill. Adm. Code 790.130) provides:

"All costs and expenses of taking evidence required by the Claimant shall be borne by the Claimant; and the costs and expenses of taking evidence required by the Respondent shall be borne by the Respondent."

3. That there is no authority to tax the transcripts as costs of Respondent.

Therefore, the motion to tax bill of costs is denied.