148

(No. 95-CC-0535–)

MARCELLO CERASANI, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 27, 2001.*

JOSEPH V. RODDY LAW OFFICES (TAMARA L. CUMMINGS, of counsel), for Claimant.

JIM RYAN, Attorney General (EDWARD C. SEWARD III, Assistant Attorney General, of counsel), for Respondent.

OPINION

MITCHELL, J.

On September 29, 1993, officers of the Chicago Police Department, armed with an arrest warrant issued in Du Page County, entered a well-known Chicago restaurant and identified themselves to the management of the restaurant. They then asked for Marcello Cerasani, the Claimant in this matter, who was a waiter at the restaurant. Mr. Cerasani was taken into custody in the public portion of the restaurant, brought into a kitchen and searched. He was there informed he was being placed under arrest for criminal conspiracy to acquire a controlled substance. The police officers handcuffed Mr. Cerasani and led him back through the restaurant and outside to a

waiting vehicle. According to uncontradicted evidence, the restaurant was extremely crowded and there were patrons waiting outside for entry. Mr. Cerasani was transported to a Chicago Police station where he spent the night. He was taken to the Du Page County Courthouse the following day. At his first hearing in front of a judge, he was informed of the time frame of the alleged conspiracy. He immediately told the judge the same thing he had told the Chicago Police officers and the Du Page Metropolitan Enforcement Group ("DuMEG") officers who had interviewed him before his court hearing, and anyone else who would listen. He told them that he was not the correct man. He even told the judge that he had been out of the country in Italy on the date he was alleged to have met with the undercover police officers at a Holiday Inn in Du Page County. Unfortunately, Mr. Cerasani sat in jail until the State's Attorney's Office of Du Page County, with the prodding of Mr. Cerasani's newly acquired lawyer, finally dismissed the charges against him. The warrant, issued by a Du Page County judge at the request of the Du Page Metropolitan Enforcement Group, was used to arrest an innocent man. Mr. Cerasani brings this claim against the State of Illinois for false imprisonment.

The Claimant's trouble began at a meeting, which occurred at a hotel in Du Page County on March 22, 1993, some six (6) months prior to the arrest of the Claimant. On that day, an undercover Du Page Metropolitan Enforcement Group officer, David Bruno, met with three suspects to discuss the sale of cocaine. This first meeting was the only contact between the undercover officer and an imposter. One of the suspects used the name Marcello Cerasani. Further, the suspect, who utilized that name, provided a phone number. Phone records revealed that the number was registered to Marcelo Cerasani and the records revealed an address. The agent in charge of

the case never went to the address and essentially never took any further steps to verify the identification of the subject who claimed his name was Marcello Cerasani. He did call the telephone number and claimed to have recognized the voice of the person who answered the phone as the person whom he had met with at the hotel. There was a second meeting at the same hotel and the person claiming to be Marcello Cerasani was not present. At this meeting, further steps were taken by the agent to prove to the suspects that cocaine could be produced for the proper purchase price. Based on the initial meeting between Agent Bruno and the three individuals, along with the phone number, Agent Bruno prepared an affidavit and procured an arrest warrant for Marcello Cerasani. No explanation is provided in the record as to why the DuMEG agents and Officer Bruno did not execute the warrant themselves. Instead, the warrant was placed into the stream of law enforcement and eventually executed by the Chicago Police Department. Had Officer Bruno attempted to execute the warrant himself, it is unlikely Mr. Cerasani would have been detained. It is interesting to note that the spaces provided for height and weight on the arrest warrant were not filled in by Officer Bruno or the agents. The morning after his arrest, the Claimant was interviewed by two (2) DuMEG agents at the Du Page County Jail. Cerasani told one of the agents that someone else had been using his name and identifying himself as Marcello Cerasani, in addition to claiming that he was not involved in the conspiracy. This information was documented in a memorandum and signed by an agent. No follow up was done on that information. A bond hearing was held during which a bond of half a million dollars was set by a judge. Claimant, during that hearing, explained that he had been in Italy during the time frame the alleged conspiracy had taken place. While

the facts differ at this stage as to whether the only agent who could identify Mr. Cerasani had contact with him, there is no dispute that Mr. Cerasani was returned to the jail at that stage. From this point on, Mr. Cerasani spent five (5) additional days in jail.

It is certainly clear that the Chicago Police Department, simply acting on an otherwise valid warrant from the Du Page County authorities, was not in a position to do anything other than arrest Mr. Cerasani. It is the conduct of the agents of the State, specifically the DuMEG agents, both before the arrest and in the six (6) day period after the arrest, which forms the basis of the claim. The agent in charge of this case attempted to verify the identity of the person whom he met in the restaurant, by simply calling a phone number and comparing the voice of the person on the phone with the voice he had heard in the restaurant, for a limited period of time. Under the circumstances, the failure to verify the identification of the man who called himself Marcello Cerasani is not justifiable. The officer made no attempts to check the imposter's personal information, unlike the other suspects. That suspects in criminal investigations use phony names comes as no great shock to either this Court nor to the offices involved. Further, the absence of a description with regard to height and weight is terribly bothersome. The officer who secured the warrant should have known that he would not necessarily be the person executing the warrant. In this case, it is apparent that he intentionally did not execute this warrant, but allowed the Chicago Police to do that job. While certainly that is acceptable law enforcement behavior, in a situation of this nature where the identity of the offenders is uncertain, once the warrant is executed, the only officer capable of making an identification should have done so in a much more expeditious fashion. That officer claims it took five to six days

for him to receive the paperwork regarding Mr. Cerasani's arrest, and only at that time, when he saw Mr. Cerasani's arrest photo, did he realize that the wrong man had been arrested. He claimed to have called the State's Attorney's office immediately to inform them that the wrong man was in custody. There is no explanation, if one chooses to believe that officer, as to why no one from the DuMEG office informed him, immediately upon the arrest, that Mr. Cerasani was claiming to have been the wrong person and had been in Europe at the time. To wait five days under those circumstances to verify the identity of someone being held on $500,000 bond is completely unreasonable.

Mr. Cerasani had never been in any trouble with the law. It is difficult to measure the impact of an incident of this nature on an individual. We are all different, but no doubt this type of conduct by governmental authorities would have an impact on anyone. Mr. Cerasani was forced to hire an attorney who, it appears, was particularly helpful in securing his justifiable release. Mr. Cerasani was embarrassed and humiliated in front of his co-workers and his employer. Public humiliation affects a person's self-esteem and psyche. The arrest and detention of Mr. Cerasani for six days under the circumstances was unreasonable, and also excessive. There is no evidence to justify the failure of authorities to verify the identity of the suspect in an immediate fashion, given the time delay between the date of the conspiracy and the date of the arrest. False imprisonment consists of an unlawful restraint against the will of an individual and, while false arrest is one method of committing false imprisonment, even when the arrest itself is valid and legally sustainable, an unreasonable detention following the arrest can be, in and of itself, false imprisonment. (*Howard v. State* (1993), 45 Ill. Ct. Cl. 214.) The contention of the State

that it is not responsible, because it did not actually arrest the Claimant, is without merit. Special Agent Bruno and DuMEG represented to the circuit court of Du Page County that Marcello Cerasani was involved in an attempt to buy cocaine. This was obviously wrong. It was and is the State's failure to identify the individual at the hotel meeting which makes this actionable. Even if this Court were to find that there was more than sufficient cause for an arrest warrant to be sought, the circumstances immediately after the Claimant's arrest require that law enforcement verify the identity of the arrestee. After Claimant's appearance in court, six hours would have been a reasonable period of time during which to identify Mr. Cerasani as the wrong person. Six days is totally inappropriate.

Therefore, the Court awards Claimant the sum of $30,000.